Martha Jane SNEED, Appellant–
Plaintiff,

v.

ASSOCIATED GROUP INSURANCE,
Appellee–Defendant.

No. 93A02–9501–EX–53.

Court of Appeals of Indiana.

April 12, 1996.

Martha Jane Sneed, Indianapolis, pro se.

Kathleen K. Shortridge, Ice Miller Donadio & Ryan, Indianapolis, for appellee.

## OPINION

SULLIVAN, Judge.

Appellant Martha Jane Sneed (Sneed) seeks judicial review of the affirmance by the full Worker's Compensation Board (Board) of its hearing member's decision denying Sneed's application for benefits.

The restated issues for our review are as follows:

(1) Does this court have jurisdiction to review the Board's decision despite Sneed's failure to file an assignment of errors;

(2) Was the evidence sufficient to support the denial of Sneed's application for benefits?

We first conclude that, notwithstanding Sneed's failure to file an assignment of errors, this court has jurisdiction to review the Board's decision. Our review of the merits of that decision, however, reveals that it must be affirmed.

## FACTS

On April 28, 1993, Sneed filed an application for benefits, alleging that, in May of 1991, she suffered a fall in the cafeteria of

her employer, Associated Group Insurance (Associated Group). In her application, Sneed alleged that she fell in a puddle of water near the cafeteria's salad bar, landing on her right knee. Sneed alleged that she remained on the floor near the salad bar for two to five minutes, and that during that time no one assisted her. At the hearing, Sneed testified that, after getting up from the fall, she completed her lunch and returned to her job. Sneed alleged that she had suffered continuous pain in the knee since the accident.

With respect to the almost two-year span between the date of the fall and her application for benefits, Sneed stated in her application that she did not notify her employer "due to lapse of memory or amnesiatic symptoms which accompanied the fall." Record at 5. She elaborated on this at the hearing by saying that she did not associate the pain in her knee with the fall until, during a physical therapy session necessitated by an unrelated incident in 1993, a therapist asked her about any falls she had suffered. It was at that time, while recounting two other falls she had suffered in 1992, that Sneed recalled the May 1991 incident.

During the period from 1991 to 1993, Sneed suffered from a variety of physical ailments unrelated to her falls, including fibromyalgia, chronic pain syndrome, chronic fatigue, arthritis, and lower back pain. Over that period of time, Sneed saw a number of doctors and therapists, and accumulated a substantial body of medical documentation. Nonetheless, there did not appear to be any specific mention of the May 1991 fall to any of her doctors until subsequent to her application for worker's compensation benefits in 1993, despite the fact that her other two falls were reported to and documented by her doctors around the time they occurred. Sneed accounted for this discrepancy at the hearing by asserting that, although she "probably" mentioned the knee problem, the doctors felt it was simply another symptom of her more general physical ailments. Record at 53.

The hearing member of the Board found against Sneed. Noting the lack of medical documentation around the time of the fall, and dismissing her assertions of lapse of memory as "not credible", Record at 19, the hearing member concluded that Sneed had failed to carry her burden of showing that she had suffered an injury arising out of and in the course of her employment within the two-year statutory time frame. The hearing member further found that, even if such injury had occurred, Sneed failed to demonstrate that she had suffered any period of disability or any statutorily compensable medical expenses due to the incident. The hearing member's decision was adopted by the full Board.

## DECISION

### I. Jurisdiction to Review the Decision

■ Associated Group argues that we lack jurisdiction to review the Board's decision, because Sneed failed to file an assignment of errors, as required both by statute and by the Rules of Appellate Procedure. We conclude that our Supreme Court's recent amendments to the Rules of Appellate Procedure, which eliminate the need for such a filing, should be applied to this appeal. Thus, the fact that Sneed failed to file an assignment of errors does not deprive us of jurisdiction over this case.[1]

At the time Sneed sought to appeal the Board's decision, the filing of an assignment of errors was required both by the Rules of Appellate Procedure and the provision within the Worker's Compensation statute addressing judicial review. Noting that the requirement was "fundamental to the appellate process",[2] our Supreme Court held that the failure to file an assignment of errors constituted a failure to invoke the jurisdiction of an appellate court in reviewing a denial of unemployment benefits. Claywell v. Review Bd. (1994) Ind., 643 N.E.2d 330, 331. In so

1. The jurisdictional defect alleged here is not one of subject matter jurisdiction, but rather jurisdiction over the particular case. See Shipshewana Convenience Corp. v. Board of Zoning Appeals (1995) Ind., 656 N.E.2d 812, 813 n. 9.

2. Claywell v. Review Bd. (1994) Ind., 643 N.E.2d 330, 331 n. 2.

holding, the court cited both the language of Ind.Appellate Rule 7.2(A)(1), which required, as a prerequisite to judicial review, "an assignment of errors for reviews from administrative decisions taken directly to the Court of Appeals under Appellate Rule 4(C)", and the provision of the unemployment compensation scheme addressing judicial review, which required that "[t]he appellant shall attach to the transcript an assignment of errors." *Id.* (quoting I.C. 22–4–17–12(f) (Burns Code Ed.Repl.1992)). The Supreme Court did not elaborate on the relationship between the requirement found in the appellate rule and the statutory requirement, and did not opine what effect, if any, the elimination of the appellate rule requirement would have upon the statutory requirement. Further, it appears that the cases in this court which led to the *Claywell* decision dealt with factual situations in which *both* the appellate requirement and the statutory requirement were cited as justifications for dismissing a defective appeal.[3]

This court applied *Claywell* in dismissing an appeal from the Worker's Compensation Board where the appellant did not file an assignment of errors in *Black v. Olive Garden Restaurant* (1994) Ind.App., 644 N.E.2d 627.[4] In so doing, we did not address the relationship between the appellate rules and the statutory requirement, though Judge

Staton expressed the view that it was the "failure to meet a statutory prerequisite [I.C. 22–3–4–8(d) ], not the failure to follow the rules of appellate procedure", which doomed the attempted review to dismissal.[5] 644 N.E.2d at 628 (opinion concurring in result).

In an *Order Amending Rules of Appellate Procedure,* filed December 15, 1995 ("Order"), our Supreme Court amended the appellate rules with respect to administrative agencies, to eliminate the assignment of errors requirement, effective February 1, 1996. Specifically, the Order amended App.R. 4(C), which grants this court jurisdiction to directly review decisions of certain administrative agencies. The amendment provides:

> "It shall be unnecessary to file a separate assignment of errors in the Court of Appeals to assert that the decision of any board, agency, or other administrative body is contrary to law. All issues and grounds for appeal appropriately preserved before the board, agency or other administrative body may be initially addressed in the appellate brief." Order at 1.

The Order also deleted the requirement found in App.R. 7.2(A)(1) that an assignment of errors be included in the administrative agency's record of proceedings. *Id.* The

---

**3.** The cases leading to the Supreme Court's *Claywell* ruling, all of which dealt with I.C. 22–4–17–12(f) (unemployment claims), were: *St. Amand–Zion v. Review Bd.* (1994) Ind.App., 635 N.E.2d 184; *Claywell v. Review Bd.* (1994) Ind.App., 635 N.E.2d 181; and *Hogan v. Review Bd.* (1994) Ind.App., 635 N.E.2d 172.

*Claywell* has been cited, as of the time of this opinion, in the following cases: *Shipshewana Convenience Corp. v. Board of Zoning Appeals* (1995) Ind., 656 N.E.2d 812; *Starzenski v. City of Elkhart* (1996) Ind.App., 659 N.E.2d 1132; *Park v. Medical Licensing Bd.* (1995) Ind.App., 656 N.E.2d 1176; *Teachers Ass'n v. Board of Sch. Trustees* (1995) Ind.App., 646 N.E.2d 988; *Jennings v. Davis* (1995) Ind.App., 645 N.E.2d 23; *Black v. Olive Garden Restaurant* (1994) Ind. App., 644 N.E.2d 627.
None of these cases purported to decide the relationship between the statutory requirement and the appellate rules, though, as will be discussed *infra,* Judge Staton in concurrence in *Black* expressed the view that the statutory requirement is independent of the appellate rule requirement.

**4.** Review of Worker's Compensation Board decisions, like those from unemployment claims, are taken directly to this court under App.R. 4(C).

**5.** Both the unemployment compensation and the worker's compensation statutory schemes contain provisions specifically addressing the assignment of errors requirement. The language of both states: "An assignment of errors ... shall be sufficient to present both the sufficiency of the facts found ... and the sufficiency of the evidence to sustain the finding of facts." I.C. 22–4–17–12(f); I.C. 22–3–4–8(d). In the unemployment statute, but not in the Worker's Compensation statute, however, this phrase is preceded by, "[t]he appellant shall attach to the transcript an assignment of errors." Despite the absence of the mandatory "shall" from the Worker's Compensation statute, it had been construed, prior to *Black,* and without reference to the appellate rules, to require the filing of an assignment of errors. *E.g., Clary v. National Friction Prod.* (1972) 259 Ind. 581, 290 N.E.2d 53, 55–6; *Overshiner v. Indiana State Highway Comm'n* (1983) Ind.App., 448 N.E.2d 1245, 1246–47.

Order did not, however, expressly discuss the assignment of errors requirement which I.C. 22–4–17–12(f) and I.C. 22–3–4–8(d) have been held to demand. Thus, since "[w]e are not free to ignore the *statutory* mandate that an assignment of errors be included with the appeal", *Claywell v. Review Bd.* (1994) Ind. App., 635 N.E.2d 181, 183, *aff'd*, 643 N.E.2d 330 (emphasis supplied), we must examine whether the assignment of errors requirement imposed by I.C. 22–3–4–8 is affected by the changes in the appellate rules.

In effect, the conflict is this: the Supreme Court has purported to delete the assignment of errors requirement for reviews of decisions of the Worker's Compensation Board, but the statute providing for our review of Worker's Compensation Board decisions has been consistently interpreted by both the Supreme Court and this court to require that the assignment be filed.[6] Further, our Supreme Court's decision in *Sheets v. Disabilities Services* (1992) Ind., 602 N.E.2d 506, appears to hold that the requirements of the Worker's Compensation statute govern the appellate rules with respect to jurisdictional prerequisites to judicial review.

In *Sheets*, the plaintiff was seeking review of a decision by the Worker's Compensation Board denying her claim for benefits. Sheets filed a praecipe within thirty days of the Board's decision, but did not file the record within thirty days; instead, she filed the record within ninety days, as permitted by the appellate rules. *See* App.R. 3(B). The Supreme Court rejected Sheets' claim that her compliance with the appellate rules was sufficient to preserve her appeal in the face of her lack of compliance with the more stringent statutory requirement.

The court first noted that the Worker's Compensation statute had long been interpreted as imposing the thirty-day require-

ment with respect to the filing of both a record and an assignment of errors. 602 N.E.2d at 506. The court also cited its own precedent stating that "the rules of appellate procedure do not apply to reviews of worker's compensation claims." *Id.* (citing *Russell v. Johnson* (1943) 220 Ind. 649, 46 N.E.2d 219). In ultimately affirming this court's dismissal of Sheets' appeal, the Supreme Court stated:

"Sheets cites recent amendments to the Indiana Rules of Appellate Procedure changing the timing of filing transcripts. She cites changes in the Indiana Rules of Trial Procedure making a motion to correct error mostly voluntary. She contends that these developments reflect a change in policy concerning the method for seeking judicial review of an award by the Worker's Compensation Board. *Because these rules do not define the method by which a party invokes the jurisdiction of courts of review, changes in the rules do not alter the teaching of three generations of caselaw.*" 602 N.E.2d at 507 (emphasis supplied).

We can only read *Sheets* to hold that statutory requirements override the appellate rules concerning procedures by which an appellant invokes our jurisdiction when seeking review of decisions of the Worker's Compensation Board. Further, although the Supreme Court in *Sheets* quoted only I.C. 22–3–4–8(b), which provides that review shall be "under the same terms and conditions as govern appeals in ordinary civil actions", the requirement of an assignment of errors has been held not to be not based solely on that language, but also on I.C. 22–3–4–8(d), which provides that "[a]n assignment of errors . . . shall be sufficient" to present the sufficiency of the findings and the sufficiency of the evidence.[7] *See Clary v. National Friction Prod.* (1972) 259 Ind. 581, 290 N.E.2d 53;

---

6. Additionally, because the Order purports to remove the assignment of errors requirement in all cases over which this court has original jurisdiction pursuant to App.R. 4(C), and given that both Worker's Compensation and Unemployment Compensation cases are cases over which we have such jurisdiction, a conclusion that the Order overrides the statutory requirements must mean that the Order overrides the very clear language in I.C. 22–4–17–12(f) that an appellant

"shall" file an assignment of errors. *See* n. 5, *supra.*

7. I.C. 22–3–4–8(d) is certainly susceptible to a reasoned interpretation that an assignment of errors, *if filed*, is all-inclusive with respect to the issues which might be argued to the Court of Appeals; but that it is not required as a jurisdictional prerequisite.

*Overshiner v. Indiana State Highway Comm'n* (1983) Ind.App., 448 N.E.2d 1245, 1246–47. *But cf. Means v. Seif Material Handling Co.* (1973) 157 Ind.App. 492, 300 N.E.2d 895, *reh'g denied* (dismissing appeal for failure to file assignment of errors within ninety days, citing appellate rules and current subsection (b)); *Slinkard v. Extruded Alloys* (1971) 150 Ind.App. 479, 277 N.E.2d 176, 179–80 (discussing I.C. 22–3–4–8 requirement without reference to current subsection (d)). The Supreme Court in *Sheets* must have been relying upon the proposition that compliance with the requirement applicable to "ordinary civil actions" was not sufficient in Worker's Compensation cases, because the plaintiff's complaint was dismissed in *Sheets despite* her compliance with the requirement applicable to "ordinary civil actions".[8]

At the time Sheets sought judicial review, the appellate rules permitted her to file the record within ninety days; nevertheless, the Supreme Court held that Sheets' noncompliance with the Worker's Compensation statute's thirty-day filing requirement dictated dismissal. Therefore, notwithstanding that I.C. 22–3–4–8(b) might plausibly be read to allow the filing of a record (or assignment of errors) later than thirty days after the appealable decision, so long as the appellant complies with the rules governing "ordinary civil actions", *Sheets* seems to foreclose this reading by holding that compliance with the statutorily imposed thirty-day requirement is a jurisdictional prerequisite regardless of an appellant's compliance with the timing specified by the appellate rules.

The Supreme Court appears to have held specifically in *Sheets* that its rules concerning jurisdictional prerequisites to appellate review are subservient to the requirements of I.C. 22–3–4–8, which have already been interpreted by that court to include the very assignment of errors which it now seeks to remove through changes in the appellate

rules. In issuing its Order, however, the court appears to be expressing the view, contrary to *Sheets*, that with respect to the procedures an appellant must employ to invoke our jurisdiction to review decisions of administrative agencies, the appellate rules should govern over statutory requirements.

It is clear that the Supreme Court, while unable to confer or deprive courts in this State of subject matter jurisdiction, has the power to prescribe procedures appellants must follow to invoke our jurisdiction to hear appeals or grant judicial review. *See* Ind. Const. Art. 7, § 6 (granting this court original jurisdiction to review decisions of administrative agencies when "authorized by rules of the Supreme Court", and stating that "[i]n all other cases, it shall exercise appellate jurisdiction under such terms and conditions as the Supreme Court shall specify by rule"). Further, with respect to our general appellate jurisdiction and procedural rules, the Supreme Court's rules take precedence over conflicting statutes. *See State v. Pease* (1988) Ind.App., 531 N.E.2d 1207, 1208 ("The ability of this court to exercise appellate jurisdiction is not dependent upon legislative enactment but devolves instead upon this court by virtue of the authority vested in the state Supreme Court to specify by rule the terms and conditions of such jurisdiction."); App.R. 4(B) ("Any law, statute or rule or part thereof in conflict with the provisions set forth hereinabove are superseded by these rules, and the portions in conflict with these rules are hereby held vacated, set aside, and held for naught."). *See generally* 4A Kenneth M. Stroud, *Indiana Practice: Appellate Procedure* § 2.4 (1990).

The very clear language of the Order demonstrates the Supreme Court's intention that an assignment of errors no longer be a requirement to an appellant's invoking our jurisdiction to review administrative decisions. Indeed, as of February 1, 1996, the assignment of errors is no longer a prerequi-

---

**8.** In the unemployment context, I.C. 22–4–17–12 has a provision nearly identical to I.C. 22–3–4–8 stating that appeals from agency decisions shall occur "under the same terms and conditions as govern appeals in ordinary civil actions." I.C. 22–4–17–12(a); I.C. 22–3–4–8(b). However, the statutory requirement in the unemployment context also appears to be based not on the fact that the assignment is required in all civil actions, but because of the specific provision requiring the assignment. *See Claywell, supra,* 643 N.E.2d at 331 (quoting I.C. 22–4–17–12(f) that "[t]he appellant shall attach to the transcript an assignment of errors").

site to appeal or judicial review in any case. The Supreme Court would surely not act to remove the assignment requirement if it felt it did not have the authority to do so. *See State ex rel. Harp v. Vanderburgh Circuit Court* (1949) 227 Ind. 353, 85 N.E.2d 254, 258 ("It is not to be presumed that this court promulgated a rule which is futile[.]"). Thus, we must conclude that the Order expresses the Supreme Court's disapproval both of *Sheets* and of the principle that a statutory procedural requirement to the invocation of our jurisdiction to review the decisions of administrative agencies pursuant to App.R. 4(C) overrides an appellate rule, at least when the appellate rule expressly rejects the procedural requirement embodied in the statute.

Having concluded that the Order removing the assignment of errors requirement governs over the statutory requirement that the assignment of errors be filed, we next consider whether this Order should apply to Sneed. Our research does not reveal any cases specifically deciding this question. However, analogy to other procedural changes enacted by the Supreme Court suggests that we should apply the Order to Sneed's appeal.

 The Supreme Court creates new rules of law through both adjudication and rulemaking. As Judge Barteau has noted, the law concerning which cases a new rule of law is to be applied to "fluctuates greatly in this state." *Preston v. State* (1994) Ind.App., 644 N.E.2d 585, 588. With respect to new rules announced through adjudication, the rule generally will be applied to all cases pending on direct appeal at the time of the decision. *Id.; see also Pirnat v. State* (1992) Ind., 600 N.E.2d 1342, *reh'g denied*, 607 N.E.2d 973. With respect to new rules announced through a rulemaking process, however, the new rule generally will only be applied to cases which arise after the new rule has been announced. *See Manns v. State Dep't of Highways* (1989) Ind., 541 N.E.2d 929, 936; *State ex rel. Uzelac v. Lake Criminal Court* (1965) 247 Ind. 87, 212 N.E.2d 21, 24.

In certain cases, however, the Supreme Court has opted not to apply a rule announced through adjudication retroactively.

In *Guinn v. Light* (1990) Ind., 558 N.E.2d 821, the plaintiff's Medical Malpractice Act complaint had been dismissed by the trial court for failure to meet the statute of limitations. In that case, the Supreme Court announced a new procedure regarding the tolling effect of filing a proposed malpractice complaint with the Department of Insurance prior to filing a complaint with a trial court. Noting, however, that the plaintiff in *Guinn* was unaware of the procedure at the time he filed his complaint, and concluding that the *Guinn* decision "has the characteristics of rulemaking," 558 N.E.2d at 824, the Supreme Court announced that the rule would only be applied prospectively. *Id.* Thus, the plaintiff in *Guinn* received the benefit of that decision's tolling rule without having had to actually comply with the procedure, and his claim was held not to be barred by the statute of limitations.

The court extended this rationale in *Miller v. Terre Haute Regional Hosp.* (1992) Ind., 603 N.E.2d 861. Concluding that it would be "patently unfair" to demand that plaintiffs meet the *Guinn* standard when it had not yet been announced, 603 N.E.2d at 863, the court, notwithstanding that the proper procedure had not in fact been followed, granted the tolling benefit of the *Guinn* decision to any medical malpractice case arising before *Guinn* was decided.

Similarly, when dealing with how to apply a new rule of law developed through its rulemaking authority, the Supreme Court has eschewed rigid adherence to a particular standard, in favor of a pragmatic determination of the most workable and fair method to apply a new rule. In *Tolson v. State* (1986) Ind., 489 N.E.2d 42, the court addressed a petition for post-conviction relief in light of amendments the court had made to the Rules of Procedure for Post–Conviction Remedies. Formerly, the rules had provided that a sentence imposed after a successful petition could not be more severe than the sentence the defendant had received before the petition. 489 N.E.2d at 43 (DeBruler, J., concurring in result). This provision had been deleted, with an effective date after Tolson's petition had been filed, but during the pendency of his appeal to the Supreme Court.

The court first noted that, although Tolson's petition had been denied by the trial court, he clearly was entitled to post-conviction relief, and the State had not contested his petition upon appeal. In reversing the trial court, the Supreme Court held that the new standard would apply to "petitions *upon which relief is granted* after [the amendment's effective date]". 489 N.E.2d at 43 (emphasis supplied). In this sense, the rule, which was disadvantageous for those seeking post-conviction relief, was given "retroactive" effect, *i.e.*, it could be applied to petitions which had been filed prior to the amendment's effective date, but which were not granted until after the effective date.

Upon rehearing, however, the Supreme Court modified its initial ruling, holding that the rule should apply only to those petitions for post-conviction relief *filed* after the amendment's effective date. *Tolson v. State* (1986) Ind., 493 N.E.2d 454, 455. The court noted that, by giving the rule retroactive effect, the disadvantages to those seeking post-conviction relief would be applied in an "anomalous" manner. *Id.* In the first case, Justice DeBruler had asserted that it would be unfair to subject those who had made the decision to file a petition under the old rule, which did not subject the petitioner to the possibility of sentence enhancement, to the possibility of such an enhancement under the new rule. 489 N.E.2d at 43. The court appeared to in effect adopt that rationale upon rehearing, and concluded that "the exigencies which led this Court to adopt the amendments ... are not such that they justify protracted litigation over questions having to do only with the applicable effective date." 493 N.E.2d at 455.

The *Tolson* cases are instructive not because they represent a departure from the traditional rule of prospective application for new rules developed through rulemaking; indeed, the ultimate outcome on rehearing was a determination that just such prospective application would be used. Rather, they are instructive, like the *Guinn* and *Miller* cases, for the methodology employed to arrive at their various conclusions. There was no assertion in any of these cases that a court is bound to follow one path or another in applying a new rule; instead, the inquiry appears to be a pragmatic one, focusing upon notions of fairness and equity to those affected by rule changes. Thus, the ameliorative effects of the *Guinn* rule (tolling of the statute of limitations) were extended retroactively to those cases arising before the decision, while strict compliance with the procedural requirements imposed by the case was given only prospective application. Similarly, given the disadvantage the change to the post-conviction relief rules visited on those seeking such relief, the new rule was applied only to those who would have been aware of the new rule at the time they filed their petition. *Cf. State ex rel. Uzelac, supra,* 247 Ind. 87, 212 N.E.2d 21, 23–4 (noting that procedural and remedial statutes can be applied retroactively, but declining to apply new rule retroactively because to do so "would not only create confusion but also aggravate inequalities and thwart the orderly prosecution of crime").[9]

■ Based upon these principles, we conclude that the Order should be applied to Sneed's appeal. The Order is clearly an "ameliorative" change in the appellate rules, designed to remove a procedural impediment that has thwarted numerous litigants in their efforts to invoke our jurisdiction to review agency decisions.[10] Both the Supreme Court and this court have repeatedly expressed the view that we look to decide cases upon the merits where possible.[11] Application of the Order to Sneed's case clearly furthers that end.

---

9. *But cf. State ex rel. Young v. Madison Circuit Court* (1974) 262 Ind. 130, 312 N.E.2d 74, 75 (contention that new rule should be applied any way other than prospectively is "wholly without merit").

10. In addition to the cases discussed textually, *see, e.g., Johnson v. Gregory* (1973) 157 Ind.App. 559, 301 N.E.2d 255, *reh'g denied.*

11. *See, e.g., Maldonado v. State* (1976) 265 Ind. 492, 355 N.E.2d 843, 847; *State v. Hancock* (1988) Ind.App., 530 N.E.2d 106, 107, *trans. denied.*

This is unlike the situation in *Tolson,* where applying a new rule to a case pending on appeal exposes a litigant to unforeseen detriment; rather, application of the Order to Sneed's appeal merely allows her the opportunity to obtain our review of the merits of the Worker's Compensation Board's decision in the same manner available to all such appellants at present. To not apply the Order to Sneed's case would expose her appeal to summary dismissal for failure to comply with a procedural requirement of which the Supreme Court has clearly stated its disapproval. We decline to do so; therefore we proceed to consideration of the merits of Sneed's appeal.[12]

## II. *Sufficiency of the Evidence*

 Our review of the sufficiency of the evidence to sustain the Board's determination is governed by a well-settled standard of review. We are limited in our review to determining whether there was competent evidence of probative value to sustain the Board's conclusion. *Starks v. National Serv–All* (1994) Ind.App., 634 N.E.2d 88, 91. We are bound by the Board's findings with respect to issues of witness credibility, we consider only that evidence favorable to the Board's award, and we will reverse a negative award only where the evidence is without conflict and leads to a conclusion opposite of that reached by the Board. *Id.; see also*

*Roebel v. Dana Corp.* (1994) Ind.App., 638 N.E.2d 1356, 1358–59; *Four Star Fabricators v. Barrett* (1994) Ind.App., 638 N.E.2d 792, 794; *Duvall v. ICI Americas* (1993) Ind.App., 621 N.E.2d 1122, 1124.

 Judged by this standard, Sneed's argument must fail. The negative award was specifically based upon the hearing member's conclusion that Sneed's account of the alleged fall was not credible. We are not free to second guess the hearing member's conclusion concerning credibility, and in light of the lack of contemporaneous documentation of the incident, we cannot say that there was no basis in the record for this conclusion.

Further, the hearing member found that, even if the fall did occur, Sneed had not proven that it occurred within the two-year statutory time limit, or that she had suffered any compensable disability or medical expenses. Again, Sneed's failure to offer any contemporaneous documentation concerning either diagnosis or expense relating to the alleged fall establishes that the record clearly permits this conclusion. While Sneed did suffer periods of disability from 1991 to 1993, the record suggests that any disability Sneed suffered over this period was due to the many other preexisting physical illnesses from which she suffered. Upon this record, the Board's decision must be affirmed.[13]

---

**12.** One might argue that, because this case involves not a "technical" violation of the appellate rules, but rather a failure (as construed at the time the appeal was filed) to invoke our jurisdiction in the first place, we are not free to consider equitable principles or our policy of looking to decide cases on the merits in deciding to address the merits of this appeal. However, we are not considering equitable principles to determine whether we have jurisdiction *per se;* rather, the equitable principles guide our decision whether to give the Supreme Court's new rule application to Sneed's case. It is the rule itself which determines our jurisdiction to hear the appeal.

We do recognize, however, that the principles of fairness cited in *Guinn* and *Miller,* as well as in the *Tolson* cases, do not have as much persuasive force for Sneed, since she presumably was aware of (or at least was charged with the awareness of) the assignment of errors requirement at the time she filed her appeal. Nevertheless, we conclude that she should not be penalized for failure to comply, at the time of her appeal on

January 31, 1995, with a procedural requirement that the Supreme Court itself determined less than a year later to be unnecessary.

**13.** Sneed further argues that the publication, over her objection, of her deposition testimony was erroneous. Sneed's claim is apparently based upon her belief that the representation she received during the taking of her deposition from her attorney, who later withdrew his representation, was inadequate. Sneed cites no irregularities in the form or procedure of the taking of her deposition, and our review of the substance of her deposition testimony indicates that it is consistent with her testimony at the hearing. We find no basis for Sneed's argument that the publication of her deposition was improper. Further, even if improper evidence is admitted in a Worker's Compensation hearing, we still affirm the award if it is supported by other, competent evidence. *See Four Star Fabricators, supra,* 638 N.E.2d at 798. As discussed textually, there was ample evidence to support the negative award in this case.

## CONCLUSION

The decision of the full Worker's Compensation Board adopting the negative award of its hearing member is affirmed.

KIRSCH, J., concurs.

BAKER, J., concurs with separate opinion.

BAKER, Judge, concurring.

While I concur with the result reached by the majority, I find it unnecessary to wander through inapplicable precedent to determine whether our Supreme Court intended to amend App.R. 4(C) alone, or whether it also intended to affect the statutory requirements for an assignment of error. I read the rule to provide that an appellate brief, which addresses issues and grounds appropriately preserved for appeal, serves the place of and is used in lieu of a separate assignment of error. Moreover, as most articulately noted by the majority opinion, the amendment to App.R. 4(C) is ameliorative and, as such, should be given retroactive application.

As to the second issue, I agree that there was sufficient evidence to deny Sneed's application for benefits. As a result, I would affirm the Board's decision.