OWEN COUNTY, by and through its OWEN COUNTY BOARD OF COMMISSIONERS, Appellant–Defendant,

v.

INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and Casey C. White, Appellee–Plaintiff.

No. 93A02–0607–EX–562.

Court of Appeals of Indiana.

March 1, 2007.

John R. McKay, Hickam & Lorenz, P.C., Spencer, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary

Casey White was employed by the Owen County Highway Department ("Owen County") until he was fired in December 2005 for allegedly failing a random drug test. White applied for unemployment benefits, which were denied on initial determination. White appealed that decision, and an Administrative Law Judge ("ALJ") reversed the initial determination, finding that the evidence failed to establish just cause for White's discharge. The Unemployment Insurance Review Board of the Indiana Department of Workforce Development ("Review Board") adopted the ALJ's findings of fact and conclusions of law and affirmed the ALJ's decision. Owen County then appealed. Concluding that the findings of fact support the Review Board's determination that White was entitled to unemployment benefits, we affirm.

### Issues

Owen County raises the issue of whether the decision of the ALJ and the Review Board is contrary to law. In addition, because of certain perceived procedural irregularities in Owen County's initiation of the appeal, the Review Board, pursuant to Indiana Code section 22-4-17-13, has filed the following Certified Question:

> Whether the procedures described in Ind. Appellate Rule 9(A)(3) and 9(I) (and Form 9-2) are the exclusive means to initiate an appeal from the Review Board, or whether the provisions in Ind. Code § § 22-4-17-11 and 22-4-17-12 govern the initiation and perfection of an appeal.

### Facts and Procedural History [1]

Owen County employed White as a truck driver and equipment operator. During White's employment, Owen County had a rule stating that testing positive for certain substances including marijuana would result in termination. The rule also provided for random testing of employees. Prior to October 2005, White had been randomly tested eight or ten times and had tested negative each time. On October 31, 2005, White was again selected for random testing and submitted a urine specimen. White received a phone call on November 2, 2005, informing him that he

---

1. We heard oral argument on the certified question on January 12, 2007, in Indianapolis, Indiana.

had failed the drug test and asking him to call the Medical Review Officer ("MRO"). White left a message for the MRO, but the MRO never returned the call. White denies any drug use during his employment, and therefore, when the MRO did not return his call, he assumed there had been a mistake in the initial test report. On November 30, Owen County received the drug test results from the laboratory. The report indicated that White tested positive for marijuana metabolite.

White was terminated in December 2005 for failing the drug screen and refusing to cooperate with the testing authorities.[2] White filed for unemployment compensation. On initial determination, the deputy found that White was discharged for just cause and he was therefore denied unemployment benefits. White appealed the initial determination of eligibility, and the ALJ reversed the initial determination, concluding that the evidence "fails to establish just cause for the claimant's discharge within the meaning of Indiana Code 22–4–15–1." Appellant's Appendix at 3. The Review Board affirmed the ALJ's decision on April 6, 2006.

On April 20, 2006, Owen County filed a "Notice of Intent to Appeal" with the Review Board, stating:

> Petitioner, Owen County, by counsel, pursuant to Indiana Appellate Rule 9(A) respectfully gives notice of an appeal from the decision entered by the Indiana Department of Workforce Development Review Board on the April 6, 2006[sic]. The following is set forth in support of this notice:
>
> 1. The decision of the Administrative Law Judge and the Review Board was contrary to law. Evidence presented was sufficient to prove

that the claimant failed federally required drug testing and that the claimant failed to exercise any retest.

> 2. The Administrative Law Judge and the Review Board improperly excluded consideration of test results and mandatory procedures issued by the Department of Transportation which require termination for substance abuse for commercial drivers.
>
> This Appeal is from a Final Judgment/Verdict.
>
> This Appeal will be taken to the Indiana Court of Appeals.
>
> Pursuant to Indiana Appellate Rule 11, the Review Board of the Department of Workforce Development is requested to transcribe, certify, and file a transcript of proceedings.

Certified Question, Exhibit 2. The Review Board sent Owen County a letter, also dated April 20, 2006, in response:

> The Review Board has received your Notice of Intent to Appeal the Review Board's Decision. The Notice of Intent informs the Review Board that you will be filing an appeal of its decision with the Indiana Court of Appeals. Although you have informed the Review Board that you are going to appeal its decision, you still have several steps to complete before your case has actually been appealed to the Court of Appeals.
>
> You have thirty (30) days from April 20, 2006 to file your Notice of Appeal and pay a $250.00 filing fee with the Clerk of the Indiana Court of Appeals....
>
> After you file your Notice of Appeal with the Clerk, the Review Board will prepare the record that the Court of

---

2. The basis for this allegation is unclear. Although White testified that he never talked to the MRO, there is no legible evidence in the record from which it can be inferred that Owen County was informed White refused to speak to the MRO.

Appeals will review to make its decision. Unless you have been granted leave to file as an indigent, the transcript will only be prepared by the Review Board after you pay the uniform average fee of $283.00.

*Id.*, Exhibit 3.

Owen County filed its Appellant's Case Summary with the Clerk of the Indiana Court of Appeals on June 26, 2006. Owen County was informed by the Clerk that its appeal had not been properly initiated, and thereafter filed a Motion for Leave to File Appeal, alleging:

1. That the Indiana Department of Workforce Development Review Board issued a final judgment/verdict ... on the 6th day of April, 2006;

2. That Appellant's Notice of Intent to Appeal as specified in the Rules of the Department of Workforce Development along with payment for preparation of the transcript was filed with the Trial Court Clerk, Indiana Department of Workforce Development Review Board, on or about the 20th day of April 2006, within 30 days of the entry of the final judgment;

3. That on the 26th day of June, 2006 Appellant filed with the Indiana Court of Appeals its Case Summary;

4. That on the 28th day of June, 2006 the Indiana Court of Appeals notified Appellant's attorney that the appeal could not be filed due to failure to properly initiate the appeal, and the Court of Appeals noted insufficient language as the reason for the forfeiture, to-wit: pleading filed on the 20th day of April 2006 was titled "Notice of *Intent* to Appeal" rather than "Notice of Appeal."

5. That appellant's Notice of Intent to Appeal contained the same content required pursuant to Appellate Procedure Rule 9, subsection F, and was filed in a timely manner....

6. That counsel for Appellant believes that it is a semantic nuance that made the filing of the appeal insufficient and believes that the interest of justice are [sic] best served by allowing the filing of this appeal, so that all issues may be properly presented before the Court.

*Id.*, Exhibit 5 (emphasis in original). The Court of Appeals issued the following order granting Owen County leave to file its appeal:

(1) Although Appellant's Notice of Intent to Appeal is unorthodox, it complies with Ind. Appellate Rule 9.

(2) Accordingly, Appellant's Motion for Leave to File Appeal is GRANTED, and this appeal shall proceed in accordance with the Rules of Appellate Procedure.

(3) Appellant shall file its Appellant's Case Summary with the Clerk of the Court within seven (7) days of the date of this order.

*Id.*, Exhibit 6.

On September 22, 2006, the Review Board filed with this court, pursuant to Indiana Code section 22–4–17–13, a certified question regarding the proper and exclusive procedure for initiating an appeal from a decision of the Review Board. The parties thereafter filed their briefs on the substantive issue raised by this appeal.

*Discussion and Decision*

I. Review Board's Certified Question

Indiana Code section 22–4–17–13 provides that the Review Board, "on its own motion, may certify questions of law to the supreme court or the court of appeals for a decision and determination." Because the statutory procedure for appealing a Review Board decision differs from the procedure outlined by the Appellate Rules for initiating an appeal in general, the Review

Board has certified to this court a question of law regarding the proper procedure for initiating an appeal from a decision of the Review Board.

### A. Statutory Provisions for Appeal from the Review Board

Indiana Code section 22–4–17–11(a) provides:

Any decision of the review board, in the absence of appeal as provided in this section, shall become final fifteen (15) days after the date the decision is mailed to the interested parties. The review board shall mail with the decision a notice informing the interested parties of their right to appeal the decision to the court of appeals of Indiana. *The notice shall inform the parties that they have fifteen (15) days from the date of mailing within which to file a notice of intention to appeal,* and that in order to perfect the appeal they must request the preparation of a transcript in accordance with section 12 of this chapter.

(Emphasis added.) Section 24–4–17–12 provides:

(a) Any decision of the review board shall be conclusive and binding as to all questions of fact. Either party to the dispute or the commissioner may, *within thirty (30) days after notice of intention to appeal as provided in this section,* appeal the decision to the court of appeals of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions.

\* \* \*

(e) The review board may, upon its own motion, or at the request of either party upon a showing of sufficient reason, extend the limit within which the appeal shall be taken, not to exceed fifteen (15) days. In every case in which an extension is granted, the extension

shall appear in the record of the proceeding filed in the court of appeals.

(Emphasis added.) Thus, the statute provides that the Review Board decision is not final for fifteen days, during which time a party wishing to appeal the decision must file a notice of intent to appeal with the Review Board. The party wishing to appeal then has thirty days in which to perfect an appeal to this court under the same rules that govern civil appeals.

### B. Appellate Rules of Procedure for Initiating an Appeal

Appellate Rule 9 governs the initiation of an appeal:

A. Filing the Notice of Appeal.

\* \* \*

(3) Administrative Appeals. A judicial review proceeding taken directly to the Court of Appeals from an order, ruling, or decision of an Administrative Agency *is commenced by filing a Notice of Appeal with the Administrative Agency within thirty (30) days after the date of the order, ruling or decision, notwithstanding any statute to the contrary.*

(Emphasis added.) Thus, the procedure prescribed by Rule 9 for appealing an administrative agency decision is the filing of a notice of appeal with the administrative agency within thirty days of the date of the decision.

### C. Selecting the Proper Appeal Procedure

Both the Appellate Rule itself and our caselaw indicate that the Rule takes precedence over a conflicting statute. The Indiana Supreme Court has the inherent power to establish rules governing the course of litigation in the trial courts. *Jackson v. City of Jeffersonville,* 771 N.E.2d 703, 705–06 (Ind.Ct.App.2002),

*trans. denied.*[3] Accordingly, our courts have repeatedly held that when there is a conflict between a procedural statute and a procedural rule adopted by our supreme court, the supreme court rule takes precedence and the conflicting statute is nullified. *Id.* at 706. To be in conflict, it is not necessary that the rule and the statute be directly opposed; rather, they need only be incompatible to the extent that both could not apply in any given situation. *In re J.L.V., Jr.,* 667 N.E.2d 186, 189 (Ind.Ct. App.1996). A procedural rule enacted by statute cannot operate as an exception to a procedural rule having general application. *Jackson,* 771 N.E.2d at 706.

The Review Board acknowledges this precedent, but urges us to exercise the discretion granted in Appellate Rule 1 ("The Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules") to adopt the statutory procedure as the exclusive and proper means by which to initiate an appeal from a Review Board decision. In support of this position, the Review Board argues that the statute provides clarity, better serves the unique population the unemployment benefits system serves, and better effects the purpose of the unemployment benefits system.

In *Sneed v. Associated Group Ins.,* 663 N.E.2d 789 (Ind.Ct.App.1996), a worker's compensation case, this court addressed the interplay between a recently-amended supreme court rule eliminating the requirement in appeals from administrative agencies that a separate assignment of errors be filed and the worker's compensation statute addressing judicial review that required such an assignment of errors to be filed. Noting that pursuant to Article 7, section 6, of the Indiana Constitution, our supreme court has the power to prescribe procedures appellants must follow to invoke appellate jurisdiction to hear appeals or grant judicial review; that with respect to general appellate jurisdiction and procedural rules, the Supreme Court's rules take precedence over conflicting statutes; and that the Supreme Court "would surely not act to remove the assignment requirement if it felt it did not have the authority to do so," *id.* at 795, we held that the rule removing the assignment of errors requirement governs over the worker's compensation statutory requirement that an assignment of errors be filed. *Id.*

The Review Board contends that unlike *Sneed,* in which there was a direct conflict because the statute said an assignment of errors shall be filed and the Rule said no assignment of errors is required, there is not necessarily a conflict here because the Rule does not say "no Notice of Intent to Appeal shall be filed." Rather, the Review Board contends that the statute and the Rule can be harmonized because the statute says a Review Board decision is not final until fifteen days after the date of the decision, in which time a notice of intent to appeal must be filed, and then the time for appeal only begins to run when the notice of intent to appeal is filed.

We cannot accept the Review Board's attempts at harmonization because the language of the Appellate Rules precludes such a conclusion. The Appellate Rules provide that for appeals from final judgments, "[a] party initiates an appeal by filing a Notice of Appeal with the trial

---

**3.** Indiana law makes a distinction between the substantive and procedural aspects of litigation. *State ex rel. Hatcher v. Lake Superior Court,* 500 N.E.2d 737, 739 (Ind.1986). Substantive law fixes "duties, establish[es] rights and responsibilities among and for persons...." *State ex rel. Blood v. Gibson Circuit Court,* 239 Ind. 394, 400, 157 N.E.2d 475, 478 (1959). Once the right is conferred, the time, manner, and method of exercising the right—in this case, the right to appeal—lies with our supreme court in its rule making power. *Id.*

court clerk within thirty (30) days *after the entry of a Final Judgment.*" App. R. 9(A)(1) (emphasis added). The statute provides that a Review Board decision is not final for fifteen days after the date of mailing the decision. If we were applying section 1 of Rule 9 to this appeal, we could perhaps agree with the Review Board that because pursuant to statute, the decision is not final for fifteen days after it is made,[4] the statutory timeline is not necessarily in conflict with that of the Rule. However, we are applying section 3 of Rule 9, which is specific to appeals from an administrative agency. An administrative appeal "is commenced by filing a Notice of Appeal with the Administrative Agency within thirty (30) days *after the date of the order, ruling or decision . . . .*" App. R. 9(A)(3) (emphasis added). Because the Rule specifically states that the date of the decision is the operative date, we must conclude that there is a conflict between the statute and the Rule. The statute purports to grant unemployment compensation appellants forty-five days from the date of a decision to perfect an appeal and the Appellate Rules give appellants thirty days to do the same. The Review Board posits that the "unique nature" of its claimants and its processes justifies such a discrepancy, in that the proceedings are informal and claimants are often unrepresented before the Review Board; therefore, giving their pro se claimants extra time to find representation, arrange for payment of the filing fee, and figure out the appellate procedure is justified. However, as one example, small claims proceedings are also informal and parties are often unrepresented, yet they are held to the Appellate Rule standards. The statute and the Rule are in conflict and the Review Board has not provided any compelling reason for us to depart from the precedent that says the Rule must prevail.[5]

The Review Board also asks that if we decide the Appellate Rules are the sole means for prosecuting an appeal from a Review Board decision, we clarify its obligations and timelines under the Rules. The Review Board is particularly concerned because although section 1 of Rule 9 requires that the Notice of Appeal be served on all parties of record and the Clerk of this court, there is no similar requirement in section 3. Thus, the Review Board posits that after the filing of a No-

---

4. Appellate Rule 2(H) defines a final judgment. It states, "A judgment is a final judgment if . . . it is otherwise deemed final by law." App. R. 2(H)(5).

5. In this particular case, Owen County filed a document titled "Notice of Intent to Appeal" with the Review Board on April 20, 2006, which was within fifteen days of the Review Board's decision. It does not appear that Owen County filed that document with the Clerk of this court until it attempted to file its Appellant's Case Summary on June 27, 2006, to which the Notice of Intent to Appeal was attached. Owen County also tendered its filing fee at that time. The Clerk did not accept the Case Summary for filing because there was no document titled "Notice of Appeal." Owen County did not proceed as required by either statute or rule. According to the Appellate Rules, which we have decided herein are the exclusive procedure by which to appeal a Review Board decision, Owen County should have served the Review Board with a Notice of Appeal within thirty days of the Review Board's decision and simultaneously filed a copy of the Notice of Appeal and tendered the filing fee to the Clerk of this court, followed in thirty days by filing of the Appellant's Case Summary. By order of this court, we determined that Owen County's Notice of Intent to Appeal served the same purpose and substantively complied with the requirements of Rule 9. Moreover, Rule 15(E) provides that failure to file an Appellant's Case Summary "shall not forfeit the appeal." Therefore, Owen County's appeal is allowed to proceed despite the procedural irregularities in its filing.

tice of Appeal with the administrative agency, triggering the responsibility of the Review Board to prepare the record and the transcript of the case, the appellant may never serve the Clerk or further pursue the appeal, putting the Review Board "to extraordinary and fruitless effort to prepare transcripts and file [Appellate Rule 10(B) and 11(B)] notices with the Clerk," certified question at 11, and leaving cases open indefinitely. However, Rule 9 also provides that "[i]n Administrative Agency appeals, the Notice of Appeal shall include the same contents and be handled in the same manner as an appeal from a Final Judgment in a civil case...." App. R. 9(I). Thus, although section 3 defines when the Notice of Appeal must be filed in an appeal from an administrative agency, everything else regarding the appeal is covered by the "standard" rules for civil appeals. Pursuant to section 3, an appellant must file his Notice of Appeal with the administrative agency within thirty days of the agency decision, and pursuant to section 1, must also serve a copy of the Notice of Appeal on the Clerk and pay the filing fee at that time. App. R. 9(E). In addition, Rule 9(H) provides that "a party must make satisfactory arrangements ... for payment of the cost of the Transcript." The Rules themselves address the Review Board's concerns.

## II. Owen County's Appeal

### A. Standard of Review

 Our standard of review when considering decisions of the Review Board is governed in part by statute. Indiana Code section 22–4–17–12(a) provides that a "decision of the review board shall be conclusive and binding as to all questions of fact." Review Board decisions may, however, be challenged as contrary to law, in which case we examine the "sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts." Ind.Code § 22–4–17–12(f). Pursuant to this standard, we review determinations of specific or basic underlying facts, conclusions or inferences drawn from those facts, and legal conclusions. *Perfection Bakeries, Inc. v. Review Bd. of Dep't of Workforce Dev.*, 783 N.E.2d 736, 739 (Ind.Ct.App.2003).

Review of the Board's findings of basic fact is subject to a "substantial evidence" standard of review. In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses and consider only the evidence most favorable to the Board's findings. We will reverse the decision only if there is no substantial evidence to support the Board's findings.

The Board's determinations of ultimate facts involve an inference or deduction based upon the findings of basic fact and is typically reviewed to ensure that the Board's inference is reasonable. We examine the logic of the inference drawn and impose any applicable rule of law. Some questions of ultimate fact are within the special competence of the Board, and it is therefore appropriate for us to accord greater deference to the reasonableness of the Board's conclusion. However, as to ultimate facts which are not within the Board's area of expertise, we are more likely to exercise our own judgment.

Finally, we review conclusions of law to determine whether the Board correctly interpreted and applied the law. In sum, basic facts are reviewed for substantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the Board's finding is a reasonable one. The amount of deference given to the Board turns on whether the issue is one within the particular expertise of the Board.

*Stanrail v. Review Bd. of Dep't of Workforce Dev.*, 735 N.E.2d 1197, 1202 (Ind.Ct.

App.2000), *trans. denied* (citations omitted).

### B. Review Board Decision

■ Owen County contends that the Review Board's decision is arbitrary, capricious, and an abuse of discretion because it ignored undisputed evidence presented at the hearing and instead made findings and drew inferences that are contrary to law.

The Review Board in this case adopted and incorporated by reference the ALJ's findings of fact and conclusions of law:

The ALJ concludes [White] was discharged but not for proven just cause within the meaning of Indiana Code 22–4–15–1. [Owen County] had a rule making testing positive for drugs an offense subject to discharge. That rule was reasonable and uniformly enforced, and [White] had constructive knowledge the rule existed. [White] was discharged for testing positive for drugs. In order to establish the reliability of a substance test the employer needs to submit into evidence the following documents or their equivalent:

1) A document signed by the tested employee acknowledging that his specimen has been taken and sealed;

2) A document signed by the witness to the taking of the specimen, the sealing of the specimen, and the forwarding of the specimen to the laboratory;

3) Reliable documentation from the laboratory establishing that the specimen was received intact and that the chain of custody was maintained by the laboratory; and

4) Reliable documentation of the laboratory test results, of the tests taken, and of the cutoff value level for each test. The evidence must establish that a positive test was confirmed using gas chromatography/mass spectrometry techniques or comparable testing procedures. In the instant case [Owen County] has submitted some documentation. However, the documentation does not establish what test was used, what test was taken or what the cut off level was for the test. It is therefore impossible to determine whether [White] did, in fact, fail the test.... It is possible that the cut off level on that particular test was 100 ng/ml and if that information was in the record then the [ALJ] could make a determination that the claimant did not fail the test. It is possible the evidence would establish that the cut off was 25 ng/ml, and in that case the [ALJ] would be able to determine that the test results should be considered reliable. Without any of that information in the record it is impossible for the [ALJ] to determine anything except that the lab made an assertion that [White] was positive for the drug without any other evidence to back that up. As a result, the evidence presented is not sufficient to determine that the claimant did test positive for marijuana. The lack of evidence is especially critical in this case because [White] denies any use for over 20 years. [White] seemed credible and if there is no showing that he shouldn't be considered credible on that issue then it comes down to the credibility of [White] and the credibility of the test and while [White] seemed credible the credibility of the unknown people in the lab and the reliability of the test can not be determined, so the evidence fails to establish just cause for [White's] discharge within the meaning of Indiana Code 22–4–15–1.

Appellant's App. at 3.

■ The purpose of the unemployment compensation act is to provide bene-

fits to those who are involuntarily out of work through no fault of their own. *Fuerst v. Review Bd. of Indiana Dep't of Workforce Dev.*, 823 N.E.2d 309, 312 (Ind. Ct.App.2005). A claimant is ineligible for unemployment benefits if he is discharged for just cause. Ind.Code § 22–4–15–1(a). Just cause includes discharge for a "knowing violation of a reasonable and uniformly enforced rule of an employer." Ind.Code § 22–4–15–1(d)(2). The employer bears the initial burden of establishing that an employee has been terminated for just cause. *Browning–Ferris Indus. v. Review Bd. of Indiana Dep't of Workforce Dev.*, 693 N.E.2d 1351, 1353 (Ind.Ct.App.1998). To establish a prima facie case for violation of an employer rule under Indiana Code section 22–4–15–1(d)(2), it is necessary for the employer to show that the claimant: (1) knowingly violated; (2) a reasonable; and (3) uniformly enforced rule.[6] *Stanrail Corp.*, 735 N.E.2d at 1203. After the employer has met his burden, the claimant must present evidence to rebut the employer's prima facie showing. *Id.*

The Owen County Highway Department had a rule prohibiting the use of drugs. There seems to be no question that the rule was reasonable and uniformly enforced. The only question is whether White "knowingly violated" the rule. Owen County's evidence at the hearing before the ALJ consisted of the testimony of the Owen County Highway Department superintendent and assistant superintendent, neither of whom testified to anything regarding the drug test other than their receipt of the results, and the introduction of several exhibits. One of the exhibits purports to show the chain of custody of White's sample. Another is the MRO's "verification worksheet," which is largely illegible, but does indicate that the "MRO Verified Result" is "positive." Appellant's Appendix at 42. Also, there is a laboratory report from MedTox Laboratories showing White tested positive for marijuana (THC) metabolite with a result of 84 ng/ml. *Id.* at 40. The lab report states that the "specimen has been tested in accordance with applicable federal requirements." *Id.* White also testified at the hearing that he had not used marijuana in over twenty years and that he takes prescription and over-the-counter medications that could have interfered with the test results.

Owen County had the initial burden of showing that White knowingly violated the rule. To meet that burden, Owen County presented only a document that shows a certain level of marijuana metabolite was found in White's specimen. There was no testimony given and no evidence presented which established what tests were conducted on the sample, the reliability or trustworthiness of the tests, or the basis for or an explanation of the results. No one from the lab testified; neither did the MRO. Although the report itself states that the test was conducted in accordance with federal requirements, there was no

---

**6.** In its brief, Owen County asserts that the fact that White tested positive for marijuana is "conclusive proof" that he was under the influence of drugs while at work on the day of the test, and thus, his discharge was for just cause under Indiana Code section 22–4–15–1(d)(6), which defines discharge for cause as "reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours." As will be discussed in more detail below, the Review Board was justified in not finding the test results in this case "conclusive." Moreover, it appears that the proceedings below were conducted on the basis of a rule violation. Discharge cannot be upheld on grounds other than the stated grounds relied upon by the employer, whether or not other grounds may have also existed. *See Butler v. Review Bd. of Indiana Dep't of Employment and Training Servs.*, 633 N.E.2d 310, 312 (Ind.Ct.App.1994).

testimony regarding what those requirements are or proving that the tests were in fact conducted in that manner. There was no testimony that White appeared to be under the influence of drugs on the day he was tested, and in fact, White was allowed to return to work immediately after submitting to the random test. In essence, Owen County presented a document that on its face shows a positive result but offered no evidence to support or explain it. White adamantly denied drug use. As stated above, it is the Review Board's responsibility to weigh the evidence and determine the credibility of the witnesses, and we may not reweigh that evidence. The Review Board determined that as between a document with no supporting testimony and White's testimony denying drug use, White was the more credible. Owen County is asking us to reweigh the evidence, and that we cannot do. There was sufficient evidence to support the Review Board's findings of fact and sufficient facts found to support the decision.

### Conclusion

The procedure outlined in the Appellate Rules should be followed in appeals from the Review Board, notwithstanding a contrary statute. Based on this record, the Review Board's finding that White was entitled to unemployment benefits was a reasonable one. The decision of the Review Board is affirmed.

Affirmed.

BAKER, C.J., and DARDEN, J., concur.