Clancy **STARKS**, Appellant–Plaintiff,

v.

**NATIONAL SERV–ALL, INC.**, Appellee–Defendant, Third–Party Plaintiff,

and

**Aetna Casualty and Surety Co.**, Appellee–Third–Party Defendant.

No. 93A02–9208–EX–00370.

Court of Appeals of Indiana, Second District.

May 23, 1994.

Edward N. Smith, Fort Wayne, for appellant.

M. Bruce Scott, DeVoss, Scott, Johnson & Baker, Decatur, for National Serv–All, Inc.

Stephen L. Bola, Hill Fulwider McDowell Funk & Matthews, Indianapolis, for Aetna Cas. and Sur. Co.

SULLIVAN, Judge.

Clancy Starks appeals a negative award of the Worker's Compensation Board of Indiana upon his claim for worker's compensation disability benefits. Upon appeal, Starks presents three issues for our review. However, we conclude that one of those issues is dispositive of his appeal. That issue, restated, is whether the Board's conclusion that Starks did not sustain an injury on June 2, 1989 while on the job is supported by sufficient evidence.

We affirm.

The Board's findings of fact reveal that Starks was employed by National Serv–All, Inc. as a sanitation truck driver. On Friday, June 2, 1989, Starks was driving his route, accompanied by his son, Ray Suel, and by Roosevelt Childs. Starks testified that there was a bag of trash at one particular stop that was too heavy for Childs to lift. Starks claimed that he (Starks) picked up the bag and threw it into the truck,[1] an assertion which neither Childs nor Suel could positively confirm. Childs testified that, following the incident, Starks continued his route for almost two hours until it was completed.

On the following Monday, June 5, Starks telephoned Serv–All complaining that he was "hurting all over" and requesting that he be allowed to stay home. However, at the suggestion of his foreman, Starks agreed to supervise a shift that day. On June 6, Starks was unable to move, his back was swollen, and he complained of numbness in his left leg, left arm, and left hand. Starks was transported to a hospital. The parties stipulated that on June 17, 1989, Starks "underwent a bilateral lumbar laminectomy with removal of the lamina of L5 and part of the lamina of S1 with bilateral disc excision at the level of L5–S1 and bilateral nerve root decompression." Record at 103. The parties also stipulated that, as of October 5, 1989, Starks had suffered a total and permanent disability.

On August 29, 1989, Starks filed an application for worker's compensation benefits. At a hearing before a single hearing member, the parties stipulated that the only issues before the hearing member were 1) whether Starks sustained an accidental injury on June 2, 1989, arising out of and in the course of his employment; 2) whether, as a result of the same injury, Starks suffered permanent total disability or partial permanent impairment; and 3) whether he was entitled to temporary total disability benefits.

Following the hearing, the following conclusions were entered:

"1. Plaintiff [Starks] has failed to sustain his burden of proof that his current disability was caused by an accident arising out

---

1. According to Serv–All procedure, when the person responsible for throwing trash into the truck claims that a particular bag is too heavy to throw into the truck, the driver must get out of the truck and verify that such is true. Therefore, although Starks did not normally throw bags into the truck, he did routinely alight from the truck and check bags that his partner claimed were too heavy to lift.

of and in the course of his employment with Defendant on June 2, 1989.

2. Plaintiff was not injured by accident arising out of and in the course of his employment with Defendant of June 2, 1989." Record at 107–08.

After a June 22, 1992 hearing, the full Worker's Compensation Board adopted the determinations made by the single hearing member, and affirmed the denial of benefits.

### Findings

We note at the outset that the parties have addressed the adequacy of the hearing member's findings and conclusions in their appellate briefs. This issue is neither specifically introduced nor squarely presented by appellant, but rather is incorporated into his sufficiency of evidence argument. Nevertheless, we address the threshold issue of whether the findings provide an adequate basis upon which to review the award.

The Board's findings must be stated with sufficient specificity upon contested issues so as to allow intelligent review. *Indiana Bell Telephone Company, Inc. v. Owens* (1980) 4th Dist.Ind.App., 399 N.E.2d 443, 445. In the instant case, the findings consist almost entirely of a summary of the testimony presented upon the issue of causation. Following is an example of the findings:

"9. Debra Kraick, who's employed with Defendant as a dispatcher and also handles Worker's Compensation matters, testified that she had no knowledge Plaintiff had an on-the-job injury until July 12, 1989. She denied receiving any radio transmissions from Plaintiff, June 2, 1989; nor did she recall any telephone conversations with Plaintiff June 5 or June 6, 1989, concerning any injury on the job.

\* \* \* \* \* \*

11. Huey Pearson, M.D., testified by deposition that he had been Plaintiff's family physician since early 1960, and that he was the physician who originally treated Plaintiff in June, 1989 for his back injury. He saw Plaintiff in the emergency room at St. Jo Hospital June 6, 1989, and was advised by Plaintiff at that time that he thought he had strained his back June 2, 1989, while lifting at work. A lumbar CT scan was done with demonstrated disc herniation at L3 and 4, and at L5–S1.

\* \* \* \* \* \*

14. Dr. Donesa's neurological consultation report indicates that Plaintiff's chief complaint at the time he was originally seen by Dr. Donesa, to be 'back pain and left hip pain, left leg pain'. At that time, Dr. Donesa's impressions of Plaintiff were as follows: 'mild diabetes, hyperurecemia, herniated lumbar disks with degenerative disk disease at the level of L3–L4, L4–L5, L5–S1, with back pain and left leg pain.' Dr. Donesa did not recall Plaintiff indicating that he had injured himself by accident at work.

\* \* \* \* \* \*

17. The medical evidence suggests that Plaintiff's weight is one of the contributing factors to injuries or types of degenerative disease, and that diabetes may contribute to degenerative disc disease. Degenerative disc disease can cause pain." Record at 106–07.

Starks's assertion regarding the adequacy of the findings is not entirely without merit. In *Perez v. United States Steel Corp.* (1981) Ind., 426 N.E.2d 29, *appeal after remand* (1981) 428 N.E.2d 212, our Supreme Court stated, "statements to the effect that 'the evidence revealed such and such . . . ,' that 'Mr. Jones testified so and so . . . ,' or that 'the Industrial Board finds Dr. Smith testified so and so . . . ,' are *not* findings of basic fact in the spirit of the requirement." *Id.* at 33. The message appears, however, to have fallen upon deaf ears, because we have since repeated that message many times. *See Hehr v. Review Bd.* (1989) 2d Dist.Ind.App., 534 N.E.2d 1122, 1127. Obviously, the Board's findings in the instant case are of the sort referred to above in *Perez*. Upon first examination, then, the findings appear not to measure up to the standard enunciated in *Perez*.

In some instances, the findings must be tailored to the issues presented and the conclusions reached. This is especially so when a negative award has been rendered.

The standard of review applicable specifically to negative decisions by the Worker's Compensation Board is:

"A claimant bears the burden of proof for his claim. A negative award may be sustained by an absence of evidence favorable to the claimant's contentions or by the presence of evidence adverse to the claimant's contentions." *Duncan v. George Moser Leather Co.* (1980) 2d Dist.Ind.App., 408 N.E.2d 1332, 1339, *quoting Dennison v. Martin, Inc.* (1979) 1st Dist. 182 Ind. App. 491, 395 N.E.2d 826, 827 (citations omitted).

We evaluate findings in view of the task which they must aid appellate courts in performing. Although the above does not directly address the subject of what courts examine when reviewing the adequacy of findings, it does succinctly describe the task which those findings must aid this court in performing. When reviewing findings, we are mindful that findings must be tailored to the particular award, and that not all findings will necessarily be of the same character. For example, the findings supporting a negative award based upon lack of causation may differ from those necessary to support a positive award.

If, for example, the hearing member had found in favor of Starks upon the issue of causation, the findings in support of that conclusion must necessarily have included a recounting of the facts of the incident which caused the injury as determined by the hearing member. Such is not necessarily true of a negative award. The hearing member concluded that Starks had failed to sustain his burden of proving that his injury was work related. Such conclusion need not necessarily have been supported by a finding as to the exact cause of Starks's condition. Reading the findings in light of the negative award, we interpret the findings to be a reflection of the hearing member's determination that the evidence is inconclusive as to the cause of Starks's condition.

Our interpretation is based in part upon the first Conclusion: "Plaintiff has failed to sustain his burden of proof that his current disability was caused by an accident arising out of and in the course of his employment with Defendant on June 2, 1989." Record at 107. In support of the above conclusion, the hearing member set out in the findings all of the conflicting relevant evidence upon the issue of causation. There was extensive evidence that Starks suffered from several chronic physical conditions that medical experts testified may have been the cause of the disabling condition. Starks did not offer, in opposition to this evidence, the opinion of a medical expert to the effect that the disabling condition in question more probably than not was work related.

In summary, the findings sufficiently illuminate, for purposes of appellate review, the hearing member's conclusion that Starks failed to prove that his disability resulted from a work-related injury.

### Sufficiency of Evidence

██ Our standard of review in reviewing a Board determination for sufficiency of evidence is well settled. We will review the evidence to determine whether there was competent evidence of probative value, without regard to its weight, to support the Board's findings. In so doing we will consider only the evidence most favorable to the award, together with all reasonable inferences to be drawn therefrom. In reviewing the Board's decision, we will neither reweigh the evidence nor judge the credibility of witnesses. *Rockwell International v. Byrd* (1986) 4th Dist.Ind.App., 498 N.E.2d 1033, 1037.

██ The pivotal issue to be decided by the hearing member, and later the full Board, was that of causation. The same is true upon appeal. While the evidence is conflicting, we conclude that the Board's determination that Starks's back condition was not work-related is supported by sufficient evidence.

Starks testified that after he lifted the bag on June 2, 1989 he immediately experienced back pain. He claimed that he called Serv–All's dispatcher almost immediately and informed her of the incident, and she told him to "take it easy" and not lift any heavy bags. Record at 265. When asked about the dispatcher's identity, he responded that he did not know who he had spoken with because, at

the time he made the call, he was "a long way" from the office and the reception on his radio was not good. Record at 264–65. He claimed that he called in from the truck later that day and again informed the dispatcher of his problem. However, Debra Kraick was the dispatcher on duty at the time, and she testified that she did not receive any calls from Starks, certainly none reporting an injury.

The record indicates that Starks worked the following Monday, June 5, although he initially called in to report that he was not physically able to work. However, Jerry Woods, Serv–All's route supervisor, reported that he spoke with Starks early on the morning of the 5th, and Starks informed Woods that he could not work because his foot was swollen. According to Woods, Starks said nothing about back pain. Woods further testified that he had never received a report from Starks during the relevant time period indicating that Starks had been injured while on the job. Woods indicated that if such a report had been made, it would have been noted somewhere in the office and would have been brought to his attention.

Robin Rieger, Serv–All's insurance clerk, testified that Starks called her on June 14 and informed her that he would undergo an operation the next day, but did not indicate why the operation was necessary. Rieger testified that it was her responsibility to submit medical forms to Serv–All's insurance carrier, and that those forms reflected a diagnosis of arthritis and disc problems, but that Starks never reported that he had been injured on the job.

Dr. Huey Pearson's June 6 intake report indicated that Starks had been hospitalized for septic arthritis, hyperuricemia, and diabetes, and that lumbar disease was discovered only after "investigations." Record at 334. Such would seem an unlikely result if Starks had informed them upon arrival that he had been injured while lifting objects at work. Indeed, there is evidence consistent with the view that even Starks was unsure at the time as to the cause of his discomfort. Dr. Donesa testified that Starks stated to him upon his initial examination that Starks's "pain *might* have come about as a result of some

lifting done, incurred in doing his work." Record at 1052 (emphasis supplied). In any event, Dr. Donesa was unable to state "with any kind of definite certainty what happened." Record at 1065.

Finally, there is evidence from which the hearing member could reasonably have concluded that Starks's disability resulted from either a chronic condition or some other cause predating the alleged June 2 incident. A Mr. Bailey reported that Starks had indicated that he (Starks) had visited the hospital on May 31 for an unspecified medical problem, and that the problem had been taken care of. Starks denied that he had visited the hospital. Dr. Bhupendra K. Shah examined Starks on June 13 for the condition allegedly resulting from the June 2 incident and noted that Starks complained that he had been suffering pain for three weeks, dating back to the last week in May, and that Starks did not know what caused his pain. Finally, it is undisputed that, at the time of the occurrence in question, Starks suffered from high blood pressure, diabetes, obesity, septic arthritis, and degenerative disc disease. The disc disease was present in his spine "at all levels" which he claims were injured while lifting the garbage bag. Record at 728. Dr. Donesa, a neurosurgeon who treated Starks, testified that degenerative disc disease takes a long time to develop. There is ample evidence to support the Board's finding.

The decision of the Worker's Compensation Board is affirmed.

FRIEDLANDER and GARRARD, JJ., concur.