Raymond W. SMITH, Jr. (Deceased), Dianne M. Smith, Raymond W. Smith, III, and Colin Dennis Smith, Appellants–Plaintiffs,

v.

BOB EVANS FARMS, INC., Appellee–Defendant.

No. 93A02–0104–EX–230.

Court of Appeals of Indiana.

Aug. 7, 2001.

**20**

G.R. Parish, Jr., Ronald G. Isaac, Klapper Isaac & Parish, Indianapolis, IN, Attorneys for Appellants.

Julia Blackwell Gelinas, Daniel G. Foote, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellants-plaintiffs Raymond W. Smith, Jr. (deceased) ("Raymond"), Dianne M. Smith ("Dianne"), Raymond W. Smith, III, and Colin Dennis Smith (collectively, "the Smiths") appeal the decision of the Worker's Compensation Board ("the Board") in favor of appellee-defendant Bob

Evans Farms, Inc. ("Bob Evans"). We affirm.

## Issues

The Smiths raise three issues for our review, which we restate as follows:

I. whether the Board's findings are sufficiently specific for appellate review and supported by the evidence;

II. whether the Board erred in determining that Raymond's death did not occur in the course of his employment with Bob Evans; and

III. whether the Board erred in determining that Raymond's death did not arise out of his employment with Bob Evans.

## Facts and Procedural History

At the time of his death, Raymond was employed by Bob Evans as an area director. As area director, Raymond was responsible for ensuring the safe and efficient operation of the restaurants in his district. Raymond reported to Kathleen Evans ("Kathleen"), vice president regional director. On June 24, 1996, Bob Evans opened a new restaurant in Princeton, Indiana. As part of his employment duties, Raymond attended the grand opening.

On that day, Raymond arrived at the restaurant around 6:00 a.m. Later that morning, Raymond left the restaurant to pick up Kathleen, Don Evans, chairman of the board, and other corporate representatives. Raymond returned to the restaurant between 9:00 and 10:30 a.m. with the corporate officers and representatives and remained there for approximately one and a half hours. During that time, Raymond called his wife, Dianne, "to say things were going well, and that he loved [her]." Raymond drove the group back to the airport and returned to the restaurant around 1:00 p.m.

Upon his return to the restaurant, Raymond went back to the kitchen to say hello to Barbara Risinger ("Risinger"), a prep trainer. Around 2:00 p.m., Raymond invited Risinger to join him for lunch at the restaurant. Raymond and Risinger were joined by two other prep trainers, Jeffrey Smock ("Smock") and Nancy Sarlouis ("Sarlouis"). Raymond ordered lunch, which was provided free of charge by the restaurant. During lunch, the four discussed how opening day was going as well as the performance of a Bob Evans restaurant in Decatur, Indiana. Risinger testified that opening day was "a perfect day. You couldn't have had a better day to open up. Everything went like clockwork." Smock testified that "[i]t was a steady day. It was not a busy day." Raymond was happy with how the opening was going and indicated that Kathleen was very happy with the grand opening. Risinger testified that Raymond's health seemed normal and that he was upbeat.

Approximately five to fifteen minutes after finishing his lunch, Raymond collapsed. He was talking when his hands slipped from the table to his lap; he made a "snoring noise"; and he fell back. Raymond was placed on the floor, and an employee called 911. A customer gave CPR until an officer arrived moments after the call. Douglas A. Young ("Young"), a Gibson County deputy sheriff, arrived on the scene and concluded that Raymond was choking. Young began performing abdominal thrusts, at which point Raymond became unconscious. The ambulance crew arrived and found Raymond unconscious and pulseless, his pupils dilated, and his skin pale, warm, and moist. Raymond went into cardiac arrest. The ambulance crew attempted to revive him but was unsuccessful. John A Heidings-

felder, M.D. ("Heidingsfelder"), a forensic pathologist and medical examiner, performed an autopsy and concluded that Raymond's death was caused either by "an occult sudden cardiac event or possible aspiration of gastric content with possible associate laryngospasm."

The Smiths filed an application for adjustment of claim on February 11, 1998, which was amended to include Raymond's dependents on May 15, 1998. On March 20, 2000, the case was heard by a single member of the Board. Prior to the hearing, the parties stipulated the following issues to the Board: (1) the medical cause of Raymond's death and (2) whether Raymond's death resulted from personal injury by accident arising out of his employment with Bob Evans.

At the hearing, the Smiths presented the affidavit of Heidingsfelder in which he opined that it was "more probabl[e] than not, that Mr. Smith did not die as a result of an occult sudden cardiac event"; that it was "more probable than not, that Mr. Smith died from asphyxiation caused by clinical laryngospasm due to the aspiration of food material"; and that it was "more probable than not, that Mr. Smith was not predisposed to aspirate food material." Heidingsfelder indicated that "factors such as nervous excitement, poor mastication, chewing, swallowing and talking at the same time may all contribute to [an asphyxial event]."

The Smiths contended that occupational stress contributed to Raymond's asphyxiation. In support of their argument, the Smiths presented the deposition testimony of Risinger that Raymond had had his "butt chewed out" by a superior a couple days prior to his death. The Smiths also relied on Dianne's deposition in which she testified that although Raymond handled stress well, he was under unusual stress at the time of his death, citing the grand opening and the fact that Raymond was preparing to fire an employee with a family.

On August 29, 2000, the single hearing judge issued findings and conclusions in which he determined that Raymond's death was an accident arising out of and in the course of his employment. Specifically, the hearing judge found that Raymond's death was caused by an asphyxial event due to laryngospasm resulting from the aspiration of gastric content. The hearing judge further found that Raymond was under unusual stress and that such stress increased his risk of choking.

On September 11, 2000, Bob Evans filed an application for review by the full Board. The Board held a hearing on January 22, 2001, and issued findings and conclusions reversing the hearing judge's decision on April 5, 2001. The Board concluded that although Raymond died of an asphyxial event, his injury was not a result of an increased risk related to his employment. Accordingly, the Board reversed the single hearing judge's award of compensation.

### Discussion and Decision

The Smiths contend that the Board erred in finding that Raymond's death did not arise out of and in the course of his employment. Specifically, the Smiths argue that Raymond's act of eating lunch was incidental to his employment and that work-induced stress contributed to the asphyxial event. The Smiths face a deferential standard of review in their attempt to challenge the Board's findings. "This Court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion." *Rogers v. Bethlehem Steel Corp.*, 655 N.E.2d 73, 75 (Ind.Ct.App.1995) (citations omitted).

It is the duty of the Worker's Compensation Board, as trier of fact ..., to make findings which reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's decision. In reviewing the Board's decision, we will not reweigh the evidence or assess the credibility of the witnesses. We employ a two-tier[ed] standard in this review. We will review the evidence in the record to see if there is any competent evidence of probative value to support the Board's findings. We then examine the findings of fact to see if they are sufficient to support the decision. We will consider only the evidence most favorable to the award, including any and all reasonable inferences deducible from the proven facts.

*K–Mart Corp. v. Morrison,* 609 N.E.2d 17, 27 (Ind.Ct.App.1993), *trans. denied.* "It is the burden of the claimant to prove a right to compensation under the Worker's Compensation Act." *Jablonski v. Inland Steel Co.,* 575 N.E.2d 1039, 1041 (Ind.Ct.App. 1991), *trans. denied* (1992). Therefore, in seeking review of the Board's adverse determination the Smiths appeal from a negative judgment. " 'A negative award may be sustained by an absence of evidence favorable to the claimant's contentions or by the presence of evidence adverse to the claimant's contentions.' " *Starks v. Nat'l Serv All, Inc.,* 634 N.E.2d 88, 91 (Ind.Ct. App.1994) (quoting *Duncan v. George Moser Leather Co.,* 408 N.E.2d 1332, 1339 (Ind.Ct.App.1980)).

The Worker's Compensation Act ("the Act") provides compensation for an employee's death when the death is (1) by accident (2) arising out of and (3) in the course of employment. *See* Ind.Code § 22–3–2–2(a). "Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Board." *Waldridge v. Futurex Indus.,*

*Inc.,* 714 N.E.2d 783, 785 (Ind.Ct.App. 1999), *trans. denied* (2000).

## I. Sufficiency of Findings

The Smiths contend that the Board's findings are not supported by the evidence and are not sufficiently specific to support its decision. Specifically, the Smiths assert that the Board failed to cite any evidence in support of finding number 8 and "disregard[ed] each and every fact which supports the conclusion that Mr. Smith's accidental injury and death arose out of and in the course of his employment with Bob Evans Farms."

In denying compensation to the Smiths, the Board found as follows:

8. Although it is found that Plaintiff died of an asphyxial event due to a laryngospasm resulting from aspiration of gastric content, the foregoing asphyxial event was not from an increased risk resulting from Raymond Smith's employment with Defendant or even from a neutral risk. Said asphyxial event resulted from the act of eating lunch while at an employer meeting. The employer meeting did not increase the risk of suffering from an asphyxial event.

"It is the duty of the Board, as the trier of fact, to make findings that reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's decision." *Neidige v. Cracker Barrel,* 719 N.E.2d 441, 443 (Ind. Ct.App.1999).

Specific findings of basic fact must reveal the Board's determination of the various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before the Board. The findings must be specific enough to provide the reader with an understanding of the Board's reasons, based on the evidence, for its finding of ultimate fact.

The more complex or technical the sub-issues or factual disputes are in any claim, the greater the particularity which is needed to satisfy the various purposes of the requirement.

*Outlaw v. Erbrich Products Co.*, 742 N.E.2d 526, 530–31 (Ind.Ct.App.2001) (citations omitted). "We evaluate findings in view of the task which they must aid appellate courts in performing." *Starks*, 634 N.E.2d at 91. "When reviewing findings, we are mindful that findings must be tailored to the particular award, and that not all findings will necessarily be of the same character." *Id.*

■ Reviewing the evidence most favorable to the Board's decision, the record supports the Board's finding that Raymond's employment did not pose an increased risk of choking. There is substantial evidence in the record that Raymond was not suffering from an unusual amount of stress. On the day of his death, Raymond called his wife to tell her that the grand opening was going well. Fellow employees testified that Raymond was very happy with the opening. Further, Dianne testified that Raymond handled stress well. The Board's finding that Raymond's employment did not create an increased risk of choking is supported by the record and is sufficiently specific for review. Although the Board did not expressly find that Raymond was not suffering from an unusual amount of stress due to his employment, the findings adequately explain, for purposes of appellate review, the Board's conclusion that the Smiths failed to prove that Raymond's death arose out of his employment.

## II. In the Course of Employment

■ First, the Smiths contend that the Board erred in concluding that Raymond's death did not occur "in the course" of his employment. At the hearing before the single hearing officer, both parties stipulated that Raymond's death occurred "in the course of" his employment. In its conclusions of law on review, however, the Board stated, "Plaintiff's death did not arise out of or *in the course of* his employment with Defendant." (emphasis added). The "in the course of" element refers to the time, place, and circumstances of the accident. *See Clemans v. Wishard Mem'l Hosp.*, 727 N.E.2d 1084, 1086 (Ind.Ct.App. 2000), *trans. denied.* "An accident occurs 'in the course of employment' when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto." *Tanglewood Trace v. Long*, 715 N.E.2d 410, 413 (Ind.Ct.App.1999), *trans. denied.* Clearly, Raymond's death occurred in the course of his employment. At the time of his death, Raymond was at the restaurant fulfilling his duties of overseeing the grand opening and meeting with fellow employees. Thus, the Board erred in concluding that Raymond's death did not occur in the course of his employment.

## III. Arising out of Employment

Second, the Smiths assert that the Board erred in concluding that Raymond's death did not arise out of his employment. Specifically, the Smiths contend that there was a strong causal connection between Raymond's death and his employment based on the following facts: (1) he was the area director for Bob Evans; (2) he was responsible for ensuring the safe and efficient operation of restaurants in his district; (3) he was required to attend the grand opening and arose early to do so; (4) he oversaw the opening and was responsible and accountable for its success or failure; (5) he had a "working" lunch

with trainers at the restaurant with the meal provided by Bob Evans; (6) he was performing duties on behalf of Bob Evans in the furtherance of its business; and (7) his activities during the grand opening directly and indirectly advanced the interests of Bob Evans. The Smiths also contend that the grand opening activities placed additional stress on Raymond and that such stress contributed to Raymond choking. Bob Evans responds that the mere fact that Raymond was performing acts incidental to his employment is insufficient to establish that his death arose out of—i.e. was caused by—his employment.

"An injury arises out of employment when a causal nexus exists between the injury sustained and the duties or service performed by the injured employee. Such a nexus is established 'when a reasonably prudent person considers a risk to be incidental to the employment at the time of entering into it.'" *Clemans*, 727 N.E.2d at 1087 (citations omitted). "This risk does not need to be expected or foreseen to be incidental to employment. As a general rule, 'a risk is incidental to the employment if the risk involved is not one to which the public at large is subjected.'" *Conway ex rel. Conway v. Sch. City of E. Chicago*, 734 N.E.2d 594, 599 (Ind. Ct.App.2000)(citations omitted), *trans. denied* (2001).

Bob Evans argues that Raymond's risk of choking was a personal risk and as such was not compensable under the Act. "Under Indiana law, risks which are incidental to and deemed arising out of employment include personal acts of employees which are reasonably necessary to their life, comfort or convenience, even though such acts are not technically acts of service." *Indiana Michigan Power Co. v. Roush*, 706 N.E.2d 1110, 1114 (Ind.Ct.App. 1999), *trans. denied.* However, "[w]hile some accidents involving such personal acts may be compensable under the worker's compensation statute as work-related injuries, the claimants still carry the burden of demonstrating some causal connection between the death and the employment." *Id.*

Here, the Board specifically found that Raymond's employment did not increase his risk of choking. The Smiths attempted to show an increased risk by alleging that Raymond was suffering from job-related stress when he choked. However, in considering the evidence most favorable to the Board's decision, the record reveals that Raymond was "very happy" with how the grand opening was going. He called his wife "to say things were going well." Further, supervising grand openings was part of Raymond's everyday job. "A workmen's compensation award is inappropriate when the employee was doing nothing out of the ordinary in performing [his] job." *Kerchner v. Kingsley Furniture Co.*, 478 N.E.2d 74, 76–77 (Ind.Ct. App.1985), *trans. denied; see also Jablonski*, 575 N.E.2d at 1043 (stating that in proving causal link, plaintiffs must demonstrate that decedent's "heart failure was either preceded by some untoward or unexpected incident, or resulted from the aggravation of a previously deteriorated heart or blood vessel"; "The mere showing that [decedent] was performing his usual everyday tasks when he suffered the fatal heart attack does not establish a right to worker's compensation benefits unless there was some event or happening beyond mere employment.").

In support of their argument that Raymond's death was causally related to his employment, the Smiths cite several cases from other jurisdictions where the courts affirmed awards of compensation. The cases relied upon by the Smiths are not particularly helpful on the facts before

us. First, we note the different procedural posture of those cases and the present case. In all but one of the cases cited by the Smiths, the Board *awarded* compensation; here, the Board *denied* compensation. On appeal, our review is limited to whether there is substantial evidence supporting the Board's determination. Where the record supports the Board's decision, we must affirm although we might have reached a different result. *Tanglewood Trace,* 715 N.E.2d at 412. The issue for our review is not whether Raymond's death arose out of his employment, which requires a finding of ultimate fact, but whether there is substantial and competent evidence in the record to support the Board's finding that his death did not arise out of his employment.

The Smiths rely heavily on *Snyder v. General Paper Corp.,* 277 Minn. 376, 152 N.W.2d 743 (1967), where Snyder choked to death on a piece of meat he consumed while entertaining a customer on a business trip. In a 4 to 3 decision, the Minnesota Supreme Court affirmed the Industrial Commission's award of compensation, concluding that the death was compensable because "everything the employee was doing at the time of his death was intimately related to his employment." 152 N.W.2d at 749. The court's decision was based on the fact that Snyder's employment "was

the sole factor in exposing [him] to the injury-producing act." [1] *Id.* In three forceful dissents, the minority charged that the majority obliterated the distinction between "in the course of" employment and "arising out of" employment. As Justice Otis stated,

> The purpose of the compensation act is to recognize and rectify illness and accidents which result from an unusual exposure to occupational hazards not encountered to the same extent by persons not so employed. It is not intended to insure an employee against injuries resulting from risks which are neither created nor aggravated by his occupational activities.

*Id.* at 752 (Otis, J., dissenting).

The Smiths also rely on *Travelers Ins. Co. v. Majersky,* 531 S.W.2d 765 (Mo.Ct. App.1975), *trans. denied* (1976), in which a newspaper employee was directed to cover an awards banquet. In *Travelers,* the Industrial Commission specifically found that the stress and tension of the assignment contributed to the employee's death and that therefore his death arose out of his employment. In an attempt to bolster the persuasive value of *Travelers,* the Smiths point out that this court favorably cited the opinion in *Indiana Michigan Power Co. v. Roush,* 706 N.E.2d 1110. However, this

---

1. In Indiana, the positional risk doctrine is generally applied to neutral risks or in traveling employee cases. *See K–Mart Corp. v. Novak,* 521 N.E.2d 1346, 1348–50 (Ind.Ct.App. 1988), *trans. denied.* In discussing application of the positional risk test, the court stated,

> "An important and growing number of courts are accepting the full implications of the positional-risk test: An injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured. It is even more common for the test

to be approved and used in particular situations. This theory supports compensation, for example, in cases of stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he was injured by some neutral force, meaning by 'neutral' neither personal to the claimant nor distinctly associated with the employment."

*Id.* at 1349 (quoting 1 LARSON, WORKMEN'S COMPENSATION LAW § 6.50 (1985)).

In the present case, the risk of choking is not a "neutral" risk requiring the application of the positional risk test.

court's reference to *Travelers* was limited to a footnote citation distinguishing the facts. Regardless, the facts before us are not identical to those found in *Travelers*.

Further, the employee in *Travelers* was directly performing duties on behalf of his employer at the time of his accident. Here, the Board specifically found that Raymond's employment did not pose an increased risk of choking. On the contrary, despite the fact that Raymond was in the restaurant overseeing the opening day activities, his lunch was not directly related to the performance of his job. Although Raymond dined with fellow employees, the lunch was not a required business meeting. The Smiths failed to demonstrate a causal relationship between Raymond's death and his employment. *Jablonski*, 575 N.E.2d at 1041 ("It is the burden of the claimant to prove a right to compensation under the Worker's Compensation Act."). The mere fact that Raymond was in the course of his employment when the injury occurred is not sufficient to support an award of compensation. *See Rogers*, 655 N.E.2d at 75 (noting that "in the course of" and "arising out of" are two separate elements; "Under the Act, an injury or death to be compensable must both arise out of and be in the course of employment, and neither alone is sufficient."). Accordingly, we cannot say that the Board erred in concluding that Raymond's death did not arise out of his employment.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.