## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2020, 10:57 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Miriam A. Rich
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

James E. Ayers
Wernle, Ristine & Ayers Legal, P.C.
Crawfordsville, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| KNK Group, Humphreys Construction, C'ville Steel Roofs, and Mitchell Humphreys, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> Doug Sarver, <br><br> *Appellee-Plaintiff*. | October 26, 2020 <br><br> Court of Appeals Case No. 20A-EX-402 <br><br> Appeal from the Indiana Worker's Compensation Board <br><br> The Honorable Linda Peterson Hamilton, Chairperson <br><br> Application No. C-238476 |

**Mathias, Judge.**

[1] KNK Group, Humphreys Construction, C'Ville Steel Roofs, and Mitchell Humphreys (collectively "the Defendants") appeal the Worker's Compensation Board's ("the Board") award in favor of Doug Sarver ("Sarver"). The

Defendants argue that the Board's award should be reversed and raise the following arguments, which we restate as:

I. Whether the Board's award of temporary total disability benefits is supported by sufficient evidence;

II. Whether the Board erred when it considered Thomas Jones's deposition;

III. Whether the Board erred when it awarded benefits to Sarver against KNK Group, a corporation that was administratively dissolved before Sarver was injured; and

IV. Whether the Board erred when it awarded benefits to Sarver against entities named after the running of the non-claim statute.

We affirm and remand for proceedings consistent with this opinion.

## Facts and Procedural History

On November 1, 2015, Sarver was employed by KNK Group,[1] Humphreys Construction, C'Ville Steel Roofs or Humphreys to replace a roof at Gilley's Antique Mall. Humphreys owned all of these businesses, wholly or at least in part. Sarver sustained injuries when he fell through the roof. Sarver suffered fractured ribs, muscle spasms, and shoulder and low-back pain. Sarver saw multiple physicians for continued pain in the months following the accident. He

---

[1] KNK Group is also referred to as K&K Group by the parties and the Board. In his initial application for adjustment of claim, Sarver named K&K Group as a defendant. For this reason, the Defendants claim that Sarver did not name a proper party. But the Defendants failed to raise this argument before the Board and, given its participation in these proceedings, KNK Group was notified of Sarver's claim.

also participated in physical therapy. Sarver continues to have numbness in his leg.

[4] On May 17, 2017, Sarver filed his application for adjustment of claim. A hearing was held on his application on June 18, 2019. The Single Hearing Member issued an award to Sarver on August 20, 2019. The Defendants requested review of the Single Hearing Member's award by the Board.

[5] On January 26, 2020, the Board adopted the Single Hearing Member's finding of facts and conclusions of law and affirmed the award. Facts pertinent to this appeal are thoroughly addressed in the findings of fact and conclusions of law, which are included below:

FINDINGS OF FACT

Defendants K & K Group, Humphreys Construction, C'ville Steel Roofs and Humphreys

1. Plaintiff, with assistance of counsel, filed his *Application for Adjustment of Claim* on May 17, 2017, naming K & K Group as the sole Defendant. Plaintiff claims that he sustained injuries by accident arising out of and in the course of his employment with K & K Group on November 1, 2015. (Finding Number 1; January 22, 2019 *Order)* He specifically alleges that his injuries were caused by falling through the roof of Gilley's Antique Mall during a roof replacement construction project.

2. Following a pre-trial conference held on November 14, 2017, the undersigned ordered K & K Group to obtain legal counsel for representation in litigation of Plaintiff's claim.

(Finding Number 2; January 22, 2019 *Order)* This order was reiterated on February 23 and March 21, 2019.

3.    On or about December 15, 2017, Humphreys, owner/manager of K & K Group, filed a *Motion to Notify Worker's Compensation Board of Request and Intent to Pursue Case Without Counsel.* Humphreys averred in his *Motion* that: K & K Group is an inactive company and has no bank accounts and has a negative net worth value and is currently out of business; K & K Group has no money available to hire legal counsel; and, that Plaintiff has filed false representations in his *Application.* Humphreys refers to Defendant as "KNK Group" and "K and K Group" in his pleading. (Finding Number 3; January 22, 2019 *Order)*

4.    On November 10, 2018, Plaintiff filed an amended *Application for Adjustment of Claim* naming Humphreys Construction, C'ville Steel Roofs and Humphreys as Defendants. (Finding Number 1a; March 21, 2019 *Order)* These entities are other construction enterprises owned and operated, wholly or in-part, by Humphreys.

5.    At a pre-trial conference held on February 26, 2019 in lieu of a scheduled hearing, Humphreys submitted information from the Indiana Secretary of State's Office indicating that KNK Group was organized as a limited liability company on April 24, 2006 and administratively dissolved on November 19, 2009. He offered no explanation of the administrative dissolution of the enterprise approximately six years before Plaintiff's date of injury. (Finding Number 4; March 21, 2019 *Order)*

6.    Plaintiff testified that he was paid for the work he performed on the Gilley's project, and at other times for other work, by Humphreys in cash and by checks from K & K

Group. Further, that no taxes were withheld from such payments, and that he did not receive any income reporting forms from Humphreys or K & K Group; i.e. W-2 or 1043 forms.

7. Thomas Jones (Jones) is presently a self-employed construction contractor. He began employment with Humphreys/K & K Group in 2012, and testified that he was usually paid for his work in cash or by checks from K & K Group. Further, that with some exception during his latter periods of employment, no taxes were withheld from his wages and no income reporting forms were provided to him.

Jones testified that sometime in 2015 Humphreys began doing business as C'ville Steel Roofs, a division of Humphreys Construction. His description of his work for C'ville Steel Roofs suggests that he may have been a supervisor or possibly a subcontractor. He described wage payment practices by C'ville Steel Roofs as similar to those Humphreys did while he was employed by K & K Group. He also expressed awareness that Humphreys did not have workers compensation insurance coverage for his various construction enterprises.

Jones testified that he knows Plaintiff, was aware that he working on the Gilley's project, and knew that he was injured during such work; however, he did not witness the accident [or] have any involvement with Plaintiff's claim. His involvement with the Gilley's project appears to have been supervisory or possibly as a subcontractor. He indicated that wage payments by Humphreys for work on the Gilley's project were made in cash and checks from K&K Group.

8. These is no evidence that K & K Group, Humphreys Construction, C'ville Steel Roofs or Humphreys were insured

for worker's compensation purposes as required by Indiana Code § 22-3-5-1 on November 10, 2015.

9. Contrary to orders made by this Board on November 17, 2017, January 22, 2019 and March 21, 2019, no attorney has appeared for K & K Group, Humphreys Construction, C'ville Steel Roofs or Humphreys. Contrary to orders made on January 22 and March 21, 2019, no information has been provided about the form of business organization and status of Humphreys' various enterprises; or, any information about worker's compensation insurance coverage for such enterprises. Furthermore, there is no evidence of the financial ability of these enterprises to satisfy Plaintiff's claims.

Humphreys did not participate in the June 18, 2019 hearing *pro se,* only as a witness in support of the affirmative defense asserted by Gilley's and Hines. He appeared at the hearings set for February 26 and June 18, 2019 without having made any necessary prior preparations despite directions and orders to do so. He did not, at either hearing setting, proffer any records, documents, or other materials for admission into the record of this matter, and due consideration in adjudication. At the June 18, 2019 hearing, he was offered opportunity to represent himself, question Plaintiff, and question Plaintiff's witness. He declined.

<u>Defendants Gilley's and Hines</u>

10. On March 19, 2018, Plaintiff filed an *Amended Application for Adjustment of Claim* naming Gilley's Antique Mall and Jeff Line as additional Defendants. (Finding Number 4; January 22, 2019 *Order)* Plaintiff correctly identified Jeff Hines as a Defendant rather than Jeff Line in an amended *Application for Adjustment of Claim* filed January 23, 2019.

Plaintiff asserts that Gilley's and Hines are secondarily liable for his claim by operation of Indiana Code § 22-3-2-14; that Gilley's and Hines are liable due to failure to obtain a Certificate of Compliance confirming worker's compensation insurance coverage for K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys. Further, that he may amend his *Application* to name another party-defendant at any time after his claim has commenced, provided that the original *Application* was timely filed; and, it was. (Finding Number 12; January 22, 2019 *Order)*

11. On April 19, 2018, counsel for Gilley's and Hines filed *Defendant, Gilley's Antique Mall/Jeff Line's Verified Motion to Dismiss.* (Finding Number 5; January 22, 2019 *Order)* Gilley's and Hines contend that Plaintiff's *Amended Application* should be dismissed because it was filed more than two years after Plaintiff's alleged injury; and, it was.

12. On October 29, 2018, counsel for Gilley's and Hines filed *Defendant, Gilley's Antique Mall/Jeff Line's Crossclaim for Indemnity,* naming K & K Group as Crossclaim-Defendant. (Finding Number 1; January 22, 2019 *Order)*

13. In his deposition of November 8, 2018, Hines testified to the following:

    a. He and his wife are owners of Gilley's Antique Mall.

    b. In the Fall of 2015, he hired Humphreys Construction/C'ville Steel Roofs to replace the roof and do some remodeling of the building which houses Gilley's Antique Mall.

c.    He was aware of Plaintiff's alleged injury and under the impression that Plaintiff was an employee of Humphreys Construction/C'ville Steel Roofs.

d.    He was not aware that Plaintiff had filed an *Application for Adjustment of Claim* regarding his claim until he received Plaintiff's *Amended Application for Adjustment of Claim* in April of 2018.

e.    Plaintiff's *Amended Application* was also his first notice that Plaintiff intended to assert claims against him and Gilley's Antique Mall.

f.    He did not understand his potential secondary liability under Indiana worker's compensation law until he received Plaintiff's *Amended Application.*

g.    He requested and obtained a certificate of worker's compensation insurance from Humphreys, but did not obtain a certificate of compliance from the Indiana Worker's Compensation Board.

(Finding Number 8; January 22, 2019 *Order*)

14.    A hearing on *Defendant, Gilley's Antique Mall/Jeff Line's Verified Motion to Dismiss* was held on November 13, 2018. The undersigned thereafter determined that additional information was needed to adjudicate the *Motion* and scheduled a hearing for February 26, 2019. (January 22, 2019 *Order*)

15.    At the February 26, 2019 pre-trial conference held in lieu of hearing, Humphreys also submitted copy of a policy declarations form pertaining to a general liability policy issued

by Hastings Mutual Insurance Company. The policy names him personally as the insured for the period of October 26, 2014 to October 26, 2015. This form is ostensibly the proof of insurance coverage that he provided to Hines at the time he contracted to repair the Gilley's building. This is not a worker's compensation insurance policy applicable to this matter, and it is noted that the period of coverage expired five days before Plaintiff's date of injury. (Finding Number 5; March 21, 2019 *Order)*

16. Indiana Code §22-3-2-14 (c) states:

Any contractor who shall sublet any contract for the performance of any work, to a subcontractor subject to the compensation provisions of IC 22-3-2 through IC 22-3-6, without obtaining a certificate from the worker's compensation board showing that such subcontractor has complied with section 5 of this chapter, IC 22-3-5-1, and IC 22-3-5-2, shall be liable to the same extent as such subcontractor for the payment of compensation, physician's fees, hospital fees, nurse's charges, and burial expenses on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract.

Gilley's and Hines did not obtain <u>Certificate of Compliance</u> from this Board confirming that Humphreys Construction/ C'ville Steel Roofs or any of Humphreys' other enterprises had appropriate worker's compensation insurance coverage.

<u>Plaintiff's Claim</u>

17. Plaintiff was actually injured on November 10, 2015. On that date, he was employed by either K & K Group, Humphreys Construction, C'ville Steel Roofs or Humphreys. Hines was under the impression that he had hired Humphreys Construction/C'ville Steel Roofs for the Gilley's project. There is no evidence that Plaintiff was engaged as an independent contractor by any party to this matter.

18. Plaintiff sustained injuries by accident arising out of and in the course of his employment with either K & K Group, Humphreys Construction, C'ville Steel Roofs or Humphreys on November 10, 2015. In summary, he sustained left side rib fractures and a lumbar strain, and such injuries necessitated the medical treatment described in corresponding records. Plaintiff did not present any specific medical service payment claims.

19. Plaintiff did not present any documentation of his income on November 10, 2015. However, he testified that he was paid $16.00 per hour for work on the Gilley's project and worked approximately 40 to 50 hours per week. Accordingly, his average weekly wage is determined to have been approximately $650.00, which equates to a temporary total disability (TTD) benefit rate of $433.35 per week. Defendants K & K Group, Humphreys Construction, C'ville Steel Roofs, Humphreys, and Gilley's/Hines did not present any evidence of Plaintiff's average weekly wage.

20. The evidence indicates that Plaintiff was disabled by his injuries from November 10, 2015 to approximately March 28, 2016; the date on which Dr. William Irwin documented Plaintiff's comment that he had been working in construction on the previous Friday (March 25). Accordingly, Plaintiff was disabled for a period of 19 weeks.

21.   On March 20, 2019, Dr. Spahr determined that Plaintiff has sustained a 6% whole body permanent partial impairment (PPI) as a result of the injuries caused by his work accident.

22.   At the February 26, 2019 pre-trial conference, Humphreys presented, for the first time, the defenses that Plaintiff was not an employee of him or his various enterprises and there was no accident as Plaintiff alleges. (Finding Number 6; March 21, 2019 *Order)* Humphreys' statements are not credible; particularly in light of his testimony in favor of Gilley's and Hines's affirmative defense, thereby contradicting his assertion of no accident.

23.   On March 8, 2019, Gilley's and Hines filed an affirmative defense asserting that Plaintiff's accident was caused by his failure to use a safety device; specifically, a safety harness. Humphreys' testimony in support of this defense is not credible.

Penalties

24.   There is no evidence that a *First Report of Employee Injury, Illness* form pertaining to Plaintiff's claim was filed as required by Indiana Code § 22-3-4-13. There is no evidence that a timely compensability determination pertaining to Plaintiff's claim was made as required by Indiana Code § 22-3-3-7. (Finding Number 7; March 21, 2019 *Order)*

25.   Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys are subject to the penalty provided in Indiana Code § 22-3-4-13(f)(1) for failure to have worker's compensation insurance coverage at the time of Plaintiff's accident.

26.   Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys have consistently acted in bad faith and with a lack of due diligence in this matter; and, are subject to the penalties described in Indiana Code §§ 22-3-4-12 and 12.1. The reasons for the civil penalties assessed herein further evidence Defendants bad faith and lack of due diligence.

27.   Gilley's and Hines have not acted in bad faith in this matter. Secondary liability for Plaintiff's claim is sufficient remedy for not diligently obtaining a Certificate of Compliance from this Board confirming that Humphreys Construction/ C'ville Steel Roofs or any of Humphreys' other enterprises had appropriate worker's compensation insurance coverage.

CONCLUSIONS OF LAW

1.    The evidence provides no clear indication of K & K Group's business status or employment relationship with Plaintiff. The evidence does indicate that Plaintiff was employed by Humphreys and/or one of his enterprises on November 10, 2015. The evidence also shows Humphreys/ C'ville Steel Roofs was hired by Hines for the Gilley's project, and that Plaintiff was injured while working on the Gilley's project. Plaintiff was an employee of Humphreys and/or one of his enterprises on November 10, 2015. Proper adjudication of Plaintiff's claim requires that he be allowed leave to his amend his *Application* to name Humphreys Construction, C'ville Steel Roofs and Humphreys as Defendants.

2.    Gilley's and Hines are secondarily liable for Plaintiff's claim for failure to obtain a Certificate of Compliance confirming worker's compensation insurance coverage for K

& K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys. Under the provisions of 631 IAC 1-1-7, Plaintiff may amend his *Application* to name another party-defendant at any time after his claim has commenced, provided that the original *Application* was timely filed; and, it was.

3. Plaintiff is entitled to payment for medical services necessitated by his work injury, and TTD and PPI benefits as described in Findings Number 20 and 21.

4. The penalty of doubled compensation for Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys' failure to have worker's compensation insurance coverage at the time of Plaintiff's accident is appropriate in this matter.

5. The penalties for Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys' bad faith/lack of due diligence are appropriate in this matter.

6. The civil penalties for Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys' violation of statutory injury reporting and claims determination requirements are appropriate in this matter.

## AWARD

1. Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys shall pay the cost of all medical services Plaintiff has received for examination and treatment of his work injury; including reimbursement to

Plaintiff's health insurance carrier, reimbursement to any entity that may have paid the cost of such medical services, payment of any liens, payment of any outstanding bills, and reimbursement to Plaintiff for any out-of-pocket payments, deductible costs or co-payments.

2.     Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys shall pay all appropriate and verifiable mileage and travel expenses associated with medical treatment that Plaintiff has received for his injury.

3.     There be awarded Plaintiff as against Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys, TTD benefits totaling $8,233.65 consistent with Finding Number 20 and Conclusion Number 3.

4.     There be awarded Plaintiff as against Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys, PPI benefits in the amount of $9,978.00, commencing November 10, 2015.

5.     The fees of Plaintiff's attorney for this specific award of medical service payments, TTD and PPI benefits shall be paid by Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys consistent with the provisions of Indiana Code § 22-3-1-4; directly to Plaintiff's attorney with credit to said Defendant(s) against the compensation awarded Plaintiff by this *Award*.

IT IS FURTHER ORDERED that *Defendant, Gilley's Antique Mall/Jeff Line's Verified Motion to Dismiss* is denied and Gilley's/Hines is secondarily liable for this award of medical service payments, disability and impairment benefits, mileage

expenses and attorney fees. Gilley's/Hines shall pay any amounts of the award described above that Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys cannot pay. Gilley's/Hines is not liable for any of the penalties (or associated attorney fees) assessed against Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys.

IT IS FURTHER ORDERED that the following penalties shall be assessed solely against Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys:

1. An additional $18,211.65 as double the total compensation awarded as TTD and PPI benefits.

2. An additional $18,211.65 shall be paid to Plaintiff for Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys bad faith and lack of due diligence in this matter.

3. Plaintiff's attorney's fees shall be adjusted accordingly for the doubled compensation amounts and, in addition thereto, $6,064.47 shall be paid by Defendant(s) K & K Group, Humphreys Construction, C'ville Steel Roofs and/or Humphreys directly to Plaintiff's attorney without credit to said Defendant(s) against the penalty assessed for bad faith and lack of due diligence or any other component of this *Award.*

4. A civil penalty of $50.00 for failure to timely report an injury and a civil penalty of $50.00 for failure to make a timely claim determination; payable to the State of Indiana, Worker's Compensation Supplemental Administrative Fund.

IT IS FURTHER ORDERED that Defendant, Gilley's
Antique Mall/Jeff Line's Crossclaim for Indemnity is dismissed.

Appellants' App. pp. 6–13. The Defendants now appeal the Board's award in
Sarver's favor.[2]

## Standard of Review

The Indiana Worker's Compensation Act ("the Act") provides compensation
for personal injury or death by accident arising out of and in the course of
employment. Ind. Code § 22-3-2-2(a). "An accident occurs in the course of
employment when it takes place within the period of employment, at a place
where the employee may reasonably be, and while the employee is fulfilling the
duties of employment or while engaged in doing something incidental thereto."
*Waters v. Ind. State Univ.*, 953 N.E.2d 1108, 1112–13 (Ind. Ct. App. 2011)
(citations omitted), *trans. denied*. The claimant bears the burden of proving a
right to compensation under the Act. *Smith v. Bob Evans Farms, Inc.*, 754 N.E.2d
18, 23 (Ind. Ct. App. 2001), *trans. denied*. The Act is to be liberally construed to
"effectuate the humane purposes of the Act[.]" *Daugherty v. Indus. Contracting &
Erecting*, 802 N.E.2d 912, 919 (Ind. 2004).

---

[2] Gilley's and Hines filed a separate appeal and argued that the Board erred when it denied their motion to
dismiss because Sarver's claim against them was barred by the statute of limitations. *Gilley's Antique Mall, et
al. v. Sarver*, 2020 WL 5808386 (Ind. Ct. App. 2020). Our court agreed that Sarver's claim against Gilley's
and Hines was not timely filed and reversed the Board's award against those defendants. *Id.*

When reviewing the Board's decisions, we are bound by its factual determinations and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Eads v. Perry Twp. Fire Dep't*, 817 N.E.2d 263, 265 (Ind. Ct. App. 2004), *trans. denied*. Unfavorable evidence must be disregarded in favor of an examination of only that evidence and the reasonable inferences therefrom that support the Board's findings. *Id.* And we neither reweigh the evidence nor judge witness credibility. *Id.* We will not disturb the Board's conclusions unless the Board incorrectly interpreted the Worker's Compensation Act. *Inland Steel Co. v. Pavlinac*, 865 N.E.2d 690, 697 (Ind. Ct. App. 2007).

## I. *Temporary Total Disability Benefits*

First, the Defendants challenge the Board's award of temporary total disability benefits from November 10, 2015, to March 28, 2016. The Defendants claim there was no evidence to support the Board's award, and that Sarver returned to work within a few weeks of his injury. Appellants' Br. at 11–12. The Defendants also argue that the Board failed to consider additional evidence during its review of the Single Hearing Member's decision despite its authority to do so pursuant to 631 Indiana Administrative Code 1-1-15(a).

Temporary total disability benefits are payable pursuant to Indiana Code section 22-3-3-8. ("With respect to injuries occurring on and after July 1, 1976, causing temporary total disability . . . there shall be paid to the injured employee during the total disability a weekly compensation equal to sixty-six

and two-thirds percent (66 2/3%) of his average weekly wages . . . for a period not to exceed five hundred (500) weeks.").

> The purpose of awarding temporary total disability payments under the Indiana Worker's Compensation Act is to compensate an employee for a loss of earning power because of an accidental injury arising out of, and in the course of, his or her employment. If the injured worker does not have the ability to return to work of the same kind or character during the treatment period for the injury, the worker is temporarily totally disabled and may be entitled to benefits.

*Cavazos v. Midwest Gen. Metals Corp.*, 783 N.E.2d 1233, 1239 (Ind. Ct. App. 2003) (citations omitted).

[10] Sarver suffered significant injuries on November 10, 2015, when he fell through the roof of Gilley's Antique Mall. He saw physicians for continuing pain through and until March 28, 2016. His medical treatment, including physical therapy, continued beyond the date established by the Single Hearing Member. Ex. Vol. III, pp. 3–4. Sarver testified that a few weeks after the accident, he was able to return to work on a part-time basis and was only able perform less physically demanding tasks.[3] Tr. p. 10. This evidence supports the conclusion that Sarver did not have the ability to return to work of the same character

---

[3] And Sarver testified that two weeks after the accident he was informed that he would lose his job if he did not return to work. Tr. p. 20.

during his treatment period and was therefore entitled to total temporary disability benefits. *See Cavazos*, 783 N.E.2d at 1239.

[11] The Defendants claim that the Board abused its discretion when it denied their motion to submit additional evidence as allowed by 631 Indiana Administrative Code 1-1-15. Humphreys wanted to submit evidence of wage payments made to Sarver during the time period that the Board awarded Sarver disability benefits.

[12] In pertinent part, 631 Indiana Administrative Code section 1-1-15 provides:

> The facts upon review by the full board will be determined upon the evidence introduced in the original hearing, without hearing new or additional evidence, at the discretion of the board. Any party desiring to introduce new or additional evidence shall file an affidavit setting forth therein the names and residences of the witnesses to be called to testify before the full board, the facts to which they will testify, or, if the new evidence be documentary, then a copy of the document proposed to be introduced setting forth good reason for failure to introduce such evidence at the original hearing. If the petition is granted, the opposing party shall have the right to introduce such additional evidence as may be necessary in rebuttal.

"When the Board is reviewing a single hearing member's determination, the decision to deny or allow the introduction of additional evidence is a matter within the Board's sound discretion." *Hancock v. Ind. School for the Blind*, 651 N.E.2d 342, 343 (Ind. Ct. App. 1995), *trans. denied*. On review, we do not disturb such rulings unless there is a clear abuse of discretion. *Id.*

[13] The issues presented in this appeal are complicated by the fact that the Defendants refused to obtain counsel to represent the business entities named as defendants in this proceeding. The Board ordered the Defendants to obtain counsel to represent those business entities, but they failed to do so. Appellants' App. p. 17. The Single Hearing Member correctly advised Humphreys that the business entities named as parties, including KNK Group, could only act through counsel. *Id.*; *see also* Ind. Code § 34-9-1-1. To the extent, Humphreys was named as a defendant in his individual capacity, he was allowed to proceed without counsel. Tr. p. 13.

[14] Additionally, the evidence the Defendants desired to submit to the Board was available and known to them and could have been submitted at the hearing before the Single Hearing Member. And, as we noted above, Sarver testified that he worked on a part-time basis performing less demanding physical tasks as he was able after he was injured. Therefore, the Board was presented with evidence that Sarver worked and was paid for that work during his period of disability. The Board did not abuse its discretion when it denied the Defendants' motion to submit additional evidence to the full Board.

[15] For all of these reasons, we affirm the Board's award of temporary total disability benefits to Sarver.

## II. *Jones Deposition*

[16] Next, the Defendants argue that the Board fundamentally erred when it considered Thomas Jones's deposition testimony. For the first time, the

Defendants claim they lacked notice of the deposition and therefore were not able to participate and defend the deposition.

[17] Jones's deposition was admitted into evidence without objection. Tr. p. 4. The Defendants claim that they lacked notice of the deposition. Because the Defendants failed to argue lack of notice in the worker's compensation proceedings, Sarver was not given the opportunity to refute the claim in the proceedings below.[4] Also, counsel for Hines attended the deposition and cross-examined Jones. Jones's deposition testimony was cumulative of Scott Brown's, who testified at the hearing. For all of these reasons, we conclude that the Board did not err when it considered Jones's deposition testimony. *See Ind. Mich. Power Co. v. Roush*, 706 N.E.2d 1110, 1115 n.4 (Ind. Ct. App. 1999) (explaining that where neither the hearing member nor the Board addresses an issue, a litigant cannot raise that issues for the first time on appeal), *trans. denied*.

### III. *Award of Benefits Against KNK Group, LLC*

[18] The Defendants argue that KNK Group, LLC was administratively dissolved in 2009, and therefore, the Board erred when it ordered KNK Group to pay worker's compensation benefits to Sarver.

[19] Humphreys conducted business as many entities, including in his own name, C'ville Steel Roofs, and KNK Group. Although the LLC may have been

---

[4] At the deposition, Hines's attorney said he spoke with Humphreys, and Humphreys claimed he did not know about the deposition. Appellants' App. p. 101.

dissolved in 2009, Humphreys still used the name for his roofing business. Humphreys continued to utilize that business entity to hire and pay employees.

[20] Moreover, the Defendants did not comply with the Board's orders to provide evidence to establish "the form of business organization and status of [the] various enterprises." Appellants' App. p. 8. As Sarver notes in his brief, there is no evidence that KNK was legally liquidated, and the company may "have assets which can be reached to satisfy its obligations[.]" Appellee's Br. at 10.

[21] For all of these reasons, the Board did not err when it ordered KNK Group to pay worker's compensation benefits to Sarver.

## IV. *Limitations for Filing a Claim Under the Nonclaim Statute*

[22] Finally, the Defendants argue that the Board erred when it awarded benefits against entities named in Sarver's application after the nonclaim statute ran. In his initial application for adjustment of claim concerning his November 10, 2015 workplace injury, Sarver named only KNK Group as his employer. Three years after his injury, on November 10, 2018, Sarver filed an amended application naming Humphreys Construction, C'ville Steel Roofs and Humphreys as defendants.

[23] A claim for worker's compensation benefits must be filed "within two (2) years after the occurrence of the accident." Ind. Code § 22-3-3-3. This statute is a nonclaim statute that "creates a right of action and has inherent in it the denial of a right of action. It imposes a condition precedent—the time element which is a part of the action itself . . . . The nonclaim statute is self-executing where

the general statute of limitations is not." *Cox v. Am. Aggregates Corp.*, 684 N.E.2d 193, 196 n.2 (Ind. 1997) (citation omitted).

[24] However, 631 Indiana Administrative Code 1-1-7 allows for joinder of defendants and authorizes the Board to "at any time, upon a proper showing, or of its own motion, [] order that any additional party be joined, when it deems the presence of the party necessary." The statutory provision imposing secondary liability also provides that "[e]very claim filed with the worker's compensation board under this section shall be instituted against all parties liable for payment" and fixes the order of payment. Ind. Code § 22-3-2-14(e).

[25] Sarver understandably named KNK Group as the defendant in his initial application of claim because Humphreys still utilized the name of that corporate entity and paid Sarver with checks drawn on KNK Group's account. After Humphreys notified the Board that KNK Group was administratively dissolved in 2009, six years before Sarver's injury occurred, Sarver sought to add Humphreys individually and the two other corporate entities owned wholly or in part by Humphreys. From the record of proceedings, it is abundantly clear that Humphreys has not operated his businesses in compliance with the laws of the State of Indiana. And for this reason, it is not clear which of Humphreys's businesses were hired to complete the roofing project at Gilley's Antique Mall. Finally, none of the defendants named in Sarver's amended application of claim filed on November 10, 2018, raised the issue of the nonclaim statute before the Single Hearing Member or the full Board. *See Roush*, 706 N.E.2d at 1115 n.4. For all of these reasons, we conclude that the Board did not err when

it awarded benefits against Humphreys, C'ville Steel Roofs and Humphreys Construction, the defendants named in Sarver's amended application for adjustment of claim.

## Conclusion

The Defendants have not raised any issues requiring reversal of the Board's award of total temporary disability benefits to Sarver. In addition, Indiana Code section 22-3-4-8(f) provides in pertinent part that "[a]n award of the full board affirmed on appeal, by the employer, shall be increased thereby five percent (5%)[.]" Because we are affirming the Board's award of temporary total disability benefits to Sarver, we order his award to be increased by 5% as required by the Act.

Affirmed and remanded with instructions to increase Sarver's award by 5%.

Bradford, C.J., and Najam, J., concur.